OPINION
{¶ 1} Appellant, John Pojman (hereinafter "John") appeals from the decision of the Crawford County Court of Common Pleas granting him a divorce from appellee, Justine Welsh-Pojman (hereinafter "Justine"). John specifically appeals the division of the marital property as decided by the trial court.
 {¶ 2} In 1985, prior to the marriage, Justine acquired real estate at 1539 Marion Road, Bucyrus, Ohio. Justine assumed the existing mortgage debt of approximately $35,000 and the deed to the real estate was placed in her name.
 {¶ 3} Thereafter, on April 11, 1992, Justine and John were married and the Marion Road property became the marital residence. In October of the same year, Justine and John took out a second mortgage on the property in the amount of $24,000. Among other debts that were paid with the proceeds of this loan were John's student loans and the remaining balance on a truck owned by John. The parties also used this money to purchase new windows for the home.
 {¶ 4} In 1995, a fire occurred at the parties' residence which resulted in extensive damage. Justine and John received approximately $80,000 in insurance proceeds to repair the damage to the home. In 1997, they secured another loan for approximately $10,000, which they used to pay off a van that belonged to Justine and add an additional bedroom to the rebuilt marital residence.
 {¶ 5} In 2001 the parties separated. Justine moved for temporary support which was issued by the Crawford County trial court. By and through the temporary support order, John was ordered to maintain "any and all known debts incurred during the period for which the parties cohabitated," which included two mortgage payments and a van payment, as well as pay child support for the couple's four children. John failed to pay the majority of these debts and was held in contempt.
 {¶ 6} The final divorce hearing was held November 27, 2002. At the hearing, the trial court determined that John had not paid the marital debts under the temporary order and ordered John to serve ten days in the Crawford County jail with eight days being suspended if he adhered to the court's previous temporary orders and paid the outstanding debt.
 {¶ 7} The trial court further determined the marital residence on Marion Road to be Justine's separate property. The trial court found that any interest John may have gained in the property during the marriage was offset by the payment of his premarital debts by Justine.
 {¶ 8} It is from this decision that the appellant appeals, asserting two assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I The trial court erred in failing to establish an equitable division ofthe property, in that it improperly determined the entire increase in themarital dwelling's value was the wife's separate property.
 {¶ 9} In reviewing appellant's argument, there are two determinations that we must make. First, we must determine whether the characterization of the marital dwelling as Justine's separate property was proper. Second, we must decide if the property was divided equitably. Each step dictates a different standard of review.
 {¶ 10} In determining whether the trial court has appropriately categorized property as separate or marital, the standard of review is whether the classification is against the manifest weight of the evidence. Henderson v. Henderson, Mercer App. No. 10-01-17, 2002-Ohio-2720, ¶ 28. A judgment of a trial court will not be reversed as being against the manifest weight of the evidence if the trial court's judgment is supported by some competent, credible evidence. DeWitt v. DeWitt, Marion App. No. 9-02-42, 2003-Ohio-851, ¶ 10.
 {¶ 11} In a divorce proceeding, the trial court must classify property as marital or separate and then award each spouse his or her separate assets. R.C. 3105.171(B) and (D). Marital property is then divided between the parties equally or, if an equal division is not possible, in such a manner as the court deems equitable. R.C.3105.171(C)(1). Marital property includes "[a]ll real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during marriage." R.C. 3105.171(A)(3)(a)(i). Marital property also includes "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." R.C. 3107.171(A)(3)(b)(iii). Separate property includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." R.C.3105.171(A)(6)(a)(ii).
 {¶ 12} As stated herein, the trial court found that the marital residence was the separate property of Justine and that she would be responsible for any debt associated with the real estate. Appellant does not challenge the trial court's finding that the marital residence was Justine's separate property, as it belonged to her before the parties were married. However, appellant maintains that a portion of the equity in the marital residence is marital property since he helped to pay the mortgages during the marriage.
 {¶ 13} This court has previously ruled that the contribution of payments toward an existing mortgage does not convert separate property into marital property. We reasoned:
Absent transmutation, we find [the real estate] was [appellee's]separate property pursuant to R.C. 3105.171(A)(6)(a)(ii). * * * The factthat the parties subsequently mortgaged the property does not in any wayalter the separate character of the property since the mortgages were nottaken in order to finance the purchase of the residence. While R.C.3105.171(A)(3)(a)(i)and (ii) provide that marital property can consist ofeither real property or an interest in real property owned by one or bothspouses which was" acquired by either or both of the spouses during themarriage," the property in this case was not in any way" acquired" duringthe parties' marriage. [Appellee] merely posted this separate property assecurity for the repayment of a marital debt. The monies borrowed went topurchase other goods or services. It is these goods which became maritalassets as payments on the debt were made using marital funds. The debtand repayment process had no transmutative effect on the separateproperty posted by [appellee] as security. Had the mortgage been taken tofinance the purchase of the [real estate] and this property was paid forusing marital monies, the property would clearly qualify as a maritalasset "acquired by either or both spouses during the marriage." See R.C.3105.171(A)(3)(a)(i) and (ii).
 Nuding v. Nuding (Dec. 7, 1998), Mercer App. No. 10-97-13 (emphasis added).
 {¶ 14} Therefore, we cannot accept John's contention that he is entitled to equity in the marital residence solely by reason of his contributing to the mortgage payments. However, as the Nuding court reasoned, goods purchased or improvements made with jointly borrowed funds become marital assets. Since the record reveals that the funds borrowed by Justine and John were used for remodeling the marital residence, specifically installing new windows and adding a new bedroom to the home, we find that these expenditures became marital assets.
 {¶ 15} Appellant also asserts that he is entitled to a portion of the real estate's increase in value as a result of the improvements to which he personally contributed. Appellant claims his "sweat equity" included installing a central air unit in the house, plumbing, landscaping, installing fences and painting, among other improvements.
 {¶ 16} In Ohio, separate property does not become marital property simply because one spouse contributed to an appreciation of the property. Therefore, John cannot be automatically awarded half of the value of the marital residence. However, where either or both spouses expend time and effort in improvements, both spouses are entitled to share in the appreciation on the separate property, as the appreciation is marital property. See R.C. 3107.171(A)(3)(b)(iii); Guziak v. Guziak
(1992), 80 Ohio App.3d 805; Jelen v. Jelen (1993), 86 Ohio App.3d 199.
 {¶ 17} Appellant also contends that he should be entitled to the increase in the value of the real estate because marital income was used to insure the home. John argues that since it was the insurance proceeds that rebuilt the house after the fire in 1995, the improvements made became marital property.
 {¶ 18} We recently held in Warner v. Warner, Union App. No. 14-03-10, 2003-Ohio-5132, that a change in the state of the property from the actual property to insurance proceeds changes the classification of the property from separate to marital. The change in the classification of the property is because the insurance was paid from marital funds. Id. at ¶ 28. We find that, on the facts before us, the improvements made as a result of the reconstruction of the house are a marital asset.
 {¶ 19} As previously noted, the trial court found that the marital residence was the separate property of Justine. The trial court also determined that John had acquired an interest in the real estate during the marriage. However, the trial court found that John's interest in the real estate was offset by Justine's payment of his premarital debt. From the record, we find there was competent, credible evidence to find that both the marital residence is Justine's separate property and that at least a portion of the appreciation is marital property in which John had an interest. Therefore, we do not find that the trial's court classification of the property as separate or marital was against the manifest weight of the evidence. But, our inquiry is not at an end, however, as we must next determine whether the division of property was fair and equitable.
 {¶ 20} When determining the propriety of a division of property, our review is based on an abuse of discretion standard. A reviewing court may modify the trial court's decision only if it finds that the trial court abused its discretion in dividing the property. Cherry v. Cherry
(1981), 66 Ohio St.2d 348, 355. Abuse of discretion connotes more than an error of law or judgment, it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore,5 Ohio St.3d 217, 219.
 {¶ 21} When presented with the task of dividing marital property, the trial court is bound by the requirements of R.C. 3105.171, which require the court to "divide the marital and separate property equitably between the parties." The statute provides that the division of marital property should be equal unless an equal division would not be equitable, in which case the court shall divide the property in a manner that it determines to be equitable. Although the statute prescribes no specific method of valuation or distribution for the court to follow in making an award, the court is required to consider the factors set out in R.C.3105.171 (F).[1] R.C. 3105.171(C)(1); Focke v. Focke (1992),83 Ohio App.3d 552, 554.
 {¶ 22} With regard to procedure, we note that when allocating property between the parties to a divorce, the court must make written findings of fact that support its division of marital assets and must indicate the basis of its award in sufficient detail to enable a reviewing court to determine whether the award is fair, equitable, and in accordance with the law. R.C. 3105.171(G); Kaechele v. Kaechele (1988),35 Ohio St.3d 93, paragraph two of the syllabus.
 {¶ 23} The trial court found that any interest in the real estate that John may have acquired during the course of the marriage was found to be offset by Justine's payment of John's pre-marital debts. Although Justine provided an accounting of what she believed John owed her for the debts she had paid on his behalf, the trial court's judgment entry does not make findings as to the amount of John's premarital debt nor does it make any findings as to the value of John's interest in the real estate, even though there is evidence in the record regarding the appreciation on the marital residence during the marriage. In fact, the only finding the court made as to value was its determination that the real estate was worth at least $80,000 when Justine obtained it in 1985.
 {¶ 24} Logic dictates that the best way to quantify the current value of home improvement expenditures, made throughout the course of the marriage, is the real estate appreciation value attributable to these improvements. Carder v. Carder, Summit App. No. 21513, 2003-Ohio-5158, ¶ 9. Although evidence was submitted regarding the value of the house at the time Justine acquired it and the appraised value of the marital residence at the time of the parties' divorce, the court did not make a finding of fact as to the appreciation of the property in which John had an interest.
 {¶ 25} We are aware that rigid rules to determine value cannot be established, as equity depends on the totality of the circumstances.Briganti v. Briganti (1984), 9 Ohio St.3d 220, 221-222. However, in any order for the division or disbursement of property the trial court is required to make written findings of fact that support the determination that the marital property has been equitably divided. R.C. 3105.171(G).
 {¶ 26} In the case sub judice, the trial court appears to have made a substantially unequal division of the marital assets without adequately explaining the basis of that unequal division. Given the insufficient findings of fact to detail the value of the marital residence, the value of John's interest in the marital property and the amount of John's premarital debt, we are left without the proper foundation to review the trial court's decision. While the trial court may have divided the property in an equitable manner, the lack of valuation in the judgment entry leaves us to only speculate whether the award was fair, equitable, and in accordance with the law. Therefore, we cannot determine whether the trial court abused its discretion and must remand the action to the trial court for further findings.
 {¶ 27} Appellant's first assignment of error is sustained.
 ASSIGNMENT OF ERROR NO. II The trial court erred by holding the husband in contempt wherethe husband had an inability to pay, and punishing him by denyinghim any of the marital property.
 {¶ 28} A person charged with contempt for violation of a court order may defend by proving it was not in his power to obey the order.Pugh v. Pugh (1984), 15 Ohio St.3d 136, 140. The party asserting the defense bears the burden of proving inability to pay. Id. An appellate court will not reverse a finding of contempt by a trial court unless that court abused its discretion. State ex rel. Ventrone v. Birkel (1981),65 Ohio St.2d 10, 11.
 {¶ 29} Pursuant to the temporary orders, the trial court ordered John to pay child support for his four children, continue making two mortgage payments as well as the monthly payment on a family van. These monthly obligations were based on a salary of $31,000. Claiming that he was financially unable to obey the court's orders, John requested a hearing to have the orders modified.
 {¶ 30} At the hearing, the trial court found that Justine had agreed to pay the first mortgage on the house; therefore, John would no longer be responsible for it. The trial court also found that John had diverted funds to pay credit cards that could have been used to fulfill his obligation under the temporary orders. Furthermore, the court found that John received a refund from the Internal Revenue Service in the amount of $2,775, but did not apply any of those proceeds to his arrearage. Based on these facts, the trial court denied John's request for modification and ordered him to continue to pay child support, one mortgage payment and the van payment.
 {¶ 31} John continued to argue his inability to pay at the final divorce hearing. However, John testified at the divorce hearing that his income would exceed $39,000 in the coming year, $8,000 more than his salary at the time of the temporary orders. The trial court rejected John's argument and found him in contempt for failure to pay.
 {¶ 32} Based on the evidence adduced at the hearing to modify the temporary orders and the divorce hearing, we do not find John established such financial difficulties that would create an inability to pay in a timely manner. Because John has not substantiated his claim of financial difficultly or other impossibility, we find the trial court did not abuse its discretion in finding him in contempt.
 {¶ 33} Appellant's second assignment of error is overruled.
 {¶ 34} Having found error prejudicial to appellant herein, in the particulars assigned and argued, we reverse the judgment of the Crawford County Court of Common Pleas and remand the matter for further proceedings consistent with this opinion.
Judgment reversed.
Bryant, P.J., concurs.
Walters, J., dissents.
[1] These factors are: the duration of the marriage, the assets and liabilities of the spouses, the desirability of awarding the family home to the spouse with custody of the children, liquidity of property to be distributed, economic desirability of retaining intact an asset or interest in an asset, tax consequences of the property division, costs of sale, if necessary than an asset be sold, any division of property made in a separation agreement voluntarily entered into by the spouses and any other factor the court finds relevant.