OPINION
{¶ 1} Appellant, Henrietta Boles Rainieri, appeals from the February 4, 2004 judgment entry of the Portage County Court of Common Pleas, Domestic Relations Division, modifying the divorce decree and granting the motion for relief from judgment of appellee, Joseph V. Rainieri, Sr.
 {¶ 2} On April 4, 2002, appellee filed a complaint for divorce against appellant alleging that the parties entered into a valid common law marriage in 1989, that no children were born as issue of the marriage, that appellant was guilty of gross neglect of duty and extreme cruelty, and that the parties were incompatible. Also, on April 4, 2002, appellee filed a motion for a temporary restraining order against appellant. On May 20, 2002, appellant filed an answer and counterclaim against appellee, denying appellee's allegation that she was guilty of gross neglect of duty and extreme cruelty. Appellee filed a reply on June 24, 2002.
 {¶ 3} On July 23, 2002, appellant filed a motion for temporary spousal support. A hearing commenced before a magistrate on August 5, 2002. On August 6, 2002, the magistrate issued a temporary order in which appellee was to pay appellant temporary spousal support in the amount of $1,000 per month and granted appellee's motion for a temporary restraining order.
 {¶ 4} On September 20, 2002, appellant filed a motion for contempt alleging that appellee had failed to pay the ordered spousal support.[1]
On September 27, 2002, appellee filed a motion to cite appellant for contempt and to modify the support order. On November 25, 2002, appellee filed a motion to reduce spousal support and for the immediate sale of the marital residence as well as a motion to sell a vehicle.[2]
 {¶ 5} A hearing commenced on January 23, 2003. On February 3, 2003, the parties entered into an agreed entry as follows: appellee was found to be in contempt for failing to pay appellant spousal support from October 2002 through January 2003; appellee failed to pay court-ordered payments on the home and other marital debts from August 2002 through January 2003; and the marital home and the two acre parcel of real estate should be listed for immediate sale. The parties agreed that the issues of willful conduct, punishment, attorney fees and costs would be continued. The trial court determined that appellee should have the exclusive use of the Florida home and boat for the months of December 2002 and January 2003, and that appellant should have exclusive use for February 2003 and March 2003. The trial court also ordered that the pickup truck should be sold by appellee and the proceeds should be held in a trust account.
 {¶ 6} A bench trial commenced on May 14, 2003.
 {¶ 7} At the bench trial, it was established that appellant and appellee were never formally married, but cohabited from 1985 and entered into a common law marriage in 1989. According to appellee, in 1985, he purchased property located at 8988 Lost Trail in North Canton, Ohio, for $70,000. Appellee testified that he put $20,000 down and financed $50,000. Appellee indicated that he eventually paid off the house with inheritance money from his mother in the amount of approximately $30,000. Appellee stated that he sold the Lost Trail property in 1994, for $155,000, which went towards the parties' residence that they built, located at 2123 Congress Lake Road in Mogadore, Ohio.
 {¶ 8} Additionally, appellee testified that in 1976, he purchased two duplexes as rental properties on Dot Avenue in Alliance, Ohio, for $30,000 each. Appellee stated that he paid off both duplexes in the late 1970s or early 1980s. Appellee said that he sold one of the duplexes in 1991, for about $56,000, and the other one in 1997, for $55,000. Appellee indicated that the proceeds from the sale of these properties went to pay off a home that the parties purchased in Florida as well as toward their living expenses when he was not employed.
 {¶ 9} According to appellant, when she moved into the Lost Trail home, the property was in appellee's name only. Appellant testified that she kept up the house and yard. Appellant indicated that in 1990, appellee added her name along with his on the deed. Appellant believed that she paid around $10,000 in a lump sum payment toward the Lost Trail residence. Appellant stated that her mother had given her some money, and thought that the $10,000 came from her mother because she did not know where else she would have gotten it from.
 {¶ 10} Pursuant to its September 9, 2003 judgment entry, the trial court granted the parties a divorce. The trial court namely ordered that appellee pay appellant spousal support in the amount of $700 per month for sixty consecutive months or until appellant should remarry or die, and determined that appellee was entitled to a premarital interest from the sale of the marital residence in the amount of $155,000.
 {¶ 11} On October 7, 2003, appellee filed a motion for relief from judgment pursuant to Civ.R. 60(B). Appellant filed a response on November 14, 2003. A hearing was held on January 14, 2004.
 {¶ 12} Pursuant to its February 4, 2004 judgment entry, the trial court granted appellee's Civ.R. 60(B) motion. The trial court indicated that it inadvertently miscalculated a business debt on the golf course in the amount of $88,000, therefore, appellant's interest was reduced by $44,000. The trial court determined that appellee's spousal support to appellant should be increased to $1,000 per month for seventy consecutive months or until appellant should remarry or die, and that appellee should be given credit in the sum of $155,000 as premarital interest in the proceeds from the sale of the marital residence. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignment of error:
 {¶ 13} "The trial court abused its discretion in its division of the cash proceeds from the sale of the marital home, by finding that [appellee] had a pre-marital interest in the marital home of $155,000. The court ruling is not sustained by the evidence and is contrary to law."
 {¶ 14} In her sole assignment of error, appellant argues that the trial court erred and abused its discretion in its division of the cash proceeds from the sale of the marital home by finding that appellee had a premarital interest in the amount of $155,000 in the residence.
 {¶ 15} This court stated in Spencer v. Spencer (June 29, 2001), 11th Dist. No. 2000-P-0080, 2001 Ohio App. LEXIS 2957, at 4-5, that:
 {¶ 16} "[i]n order to prevail on a motion for relief from judgment pursuant to Civ.R. 60(B), the movant must demonstrate: (1) a meritorious claim or defense if relief is granted, (2) entitlement to the relief under one of the grounds stated in Civ.R. 60(B)(1) through (5), and (3) timeliness of the motion. GTE Automatic Elec., Inc. v. ARC Industries,Inc. (1976), 47 Ohio St.2d 146 * * *, paragraph two of the syllabus. The decision to grant or deny a motion for relief from judgment is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. Griffey v. Rajan (1987), 33 Ohio St.3d 75, 77 * * *. An abuse of discretion connotes more than an error of law or of judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219 * * *." (Parallel citations omitted.)
 {¶ 17} We note that R.C. 3105.171 controls the distribution of property at the termination of a marriage. In Bisker v. Bisker (1994),69 Ohio St.3d 608, 609, the Supreme Court of Ohio stated:
 {¶ 18} "[a] trial court is vested with broad discretion when fashioning its division of marital property. Berish v. Berish (1982),69 Ohio St.2d 318 * * *. However, a trial court's discretion is not unbridled. The award need not be equal, but it must be equitable. Cherryv. Cherry (1981), 66 Ohio St.2d 348 * * *. A reviewing court will not substitute its judgment for that of the trial court unless the trial court's decision is unreasonable, arbitrary or unconscionable. Blakemore
[supra] * * *." (Parallel citations omitted.)
 {¶ 19} After a trial court determines what constitutes separate property and what constitutes marital property pursuant to R.C. 3105.171(B), it is required to divide the property equitably with the separate property generally being designated to the spouse who brought it into the marriage. R.C. 3105.171(D). Separate property means "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage[.]" R.C.3105.171(A)(6)(a)(ii). "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b).
 {¶ 20} In the case at bar, the trial court did not abuse its discretion by granting appellee's Civ.R. 60(B) motion, in which it determined that $155,000 was premarital, i.e., separate, property. Again, the parties entered into a common law marriage in 1989. Prior to their common law marriage, appellee purchased the Lost Trail property in 1985, for $70,000. Again, appellee put down $20,000 and financed $50,000. Appellee testified that he eventually paid off the house with inheritance money from his mother in the sum of about $30,000. The record shows that appellee sold the Lost Trail property in 1994, for $155,000, which went towards the parties' Congress Lake Road residence. Although appellant testified that she contributed around $10,000 to the Lost Trail property, she provided no evidence to support her position that she did in fact make a $10,000 payment. In addition, appellant contends that she worked around the home and made nominal improvements. However, passive enhancements or improvements to separate property do not automatically alter its character. See, generally, Middendorf v. Middendorf (1998),82 Ohio St.3d 397; Pojman v. Pojman, 3d Dist. No. 3-03-12, 2003-Ohio-6708.
 {¶ 21} With respect to the Lost Trail survivorship deed, appellee testified at trial that in 1990, he added appellant's name along with his on the deed. On direct examination, appellee was asked if he ever intended to make a gift of the property at issue to appellant, and he responded, "no." On cross-examination, appellee stated that he put appellant's name on the deed because she cried and thought that he might throw her out someday. Thus, appellee thought that he would just add appellant's name. According to appellant, she wanted her name on the deed because she was worried that if something happened to appellee, she would not have a home to live in.
 {¶ 22} The evidence establishes that appellee did not gift appellant an undivided one-half interest in his Lost Trail home. Appellee's testimony hardly illuminates any intent to gift an interest in the property to appellant. The record supports the trial court's conclusion that the Lost Trail residence was appellee's separate property. SeeO'Grady v. O'Grady, 11th Dist. No. 2003-T-0001, 2004-Ohio-3504, at ¶ 66-73 (holding that the addition of the appellant's name on the survivorship deed did not amount to a gift since there was no donative intent, and, thus, the record supported the trial court's conclusion that the residence, purchased prior to the marriage, was the appellee's separate property.)
 {¶ 23} Here, appellee satisfied his burden of proving that the Lost Trail home was his own premarital property and its sale proceeds in the amount of $155,000 were traced to the marital residence. See Peck v.Peck (1994), 96 Ohio App.3d 731, 734.
 {¶ 24} For the foregoing reasons, appellant's sole assignment of error is not well-taken. The judgment of the Portage County Court of Common Pleas, Domestic Relations Division, is affirmed.
Grendell, J., concurs, O'Toole, J., dissents with Dissenting Opinion.
[1] Appellant filed additional motions for contempt on November 7, 2002, and on January 14, 2003.
[2] Appellee filed an additional motion to reduce spousal support on February 24, 2003.