OPINION
{¶ 1} The plaintiff-appellant, Robyn L. Wygant ("Robyn"), appeals the July 21, 2005, Judgment Entry Decree of Divorce of the Court of Common Pleas, Wyandot County, Ohio.
 {¶ 2} The plaintiff-appellant, Robyn, and defendant-appellee, Robert Wygant ("Robert") were married on May 20, 1999 and two children were born as issue of the marriage, both of whom were minor children at the time of the divorce. On June 25, 2004, Robyn filed a complaint for divorce. On July 23, 2004, Robert filed an answer to said complaint and a counterclaim for divorce. On July 28, 2004, Robyn answered the counterclaim. On September 20, 2004, a Consent Judgment Entry was filed providing a shared parenting arrangement with Robyn as the residential parent. On January 3, 2005, Robert filed a Motion for ex parte emergency order of custody with an affidavit. On that same day, the trial court granted the motion and provided that Robert was the temporary residential parent and the legal custodian.
 {¶ 3} A trial was held for three days commencing on March 7, 2005. Due to the case not being concluded within the three days allotted, it was continued for an additional day of trial on March 25, 2005. On June 29, 2005, the Findings and Opinion were filed by the trial court. On July 21, 2005, the Judgment Entry Decree of Divorce with Minor Children was filed by the trial court designating Robert as the residential parent and ruling that the real property at Lake Penage, Ontario, Canada was Robert's separate property.
 {¶ 4} On August, 19, 2005, plaintiff-appellant filed a notice of appeal alleging the following assignments of error:
 Assignment of Error 1 THE TRIAL COURT ERRED WHEN IT DESIGNATED DEFENDANT-APPELLEEROBERT WYGANT AS RESIDENTIAL PARENT OF THE PARTIES' CHILDREN.
 Assignment of Error 2 THE TRIAL COURT ERRED WHEN IT RULED THAT THE PARTIES' REALPROPERTY AT LAKE PENAGE, ONTARIO, CANADA WAS THEDEFENDANT-APPELLEE'S SEPARATE PROPERTY AND NOT MARITAL PROPERTY.
 {¶ 5} In Robyn's first assignment of error, she alleges that the trial court erred when it designated Robert as the residential parent of the parties' children. Specifically, she argues that the trial court failed to properly consider the factors for determining the best interest of the children that are set forth in R.C. 3109.04(F)(1).
 {¶ 6} A trial court's decision regarding the allocation of parental rights and responsibilities that is supported by substantial competent and credible evidence will not be reversed on appeal absent an abuse of discretion. Bechtol v. Bechtol
(1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus. In determining the allocation of parental rights and responsibilities, the trial court is granted broad discretion.Miller v. Miller (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. The Ohio Supreme Court, noted in Trickey v. Trickey (1952),158 Ohio St. 9, 13, 106 N.E.2d 772, that "[i]n proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record." Accordingly, the trial court's determination as to custody will not be disturbed on appeal absent an abuse of discretion.
 {¶ 7} In making an allocation of parenting rights, the court must consider the best interests of the child. R.C.3109.04(B)(1). In order to determine the child's best interests, the trial court is required to consider the factors outlined in R.C. 3109.04(F)(1), but may consider additional factors as well. R.C. 3109.04(F)(1). Accordingly, we must examine the record to determine (1) that the trial court considered all of the necessary factors listed in R.C. 3109.04(F)(1) and (2) that there is competent, credible evidence supporting the trial court's conclusion that designating Robert the residential parent is in the children's best interests.
 {¶ 8} Pursuant to R.C. 3109.04(F)(1),
In determining the best interest of a child pursuant to thissection, whether on an original decree allocating parental rightsand responsibilities for the care of children or a modificationof a decree allocating those rights and responsibilities, thecourt shall consider all relevant factors, including, but notlimited to:
 (a) The wishes of the child's parents regarding the child'scare;
 (b) If the court has interviewed the child in chamberspursuant to division (B) of this section regarding the child'swishes and concerns as to the allocation of parental rights andresponsibilities concerning the child, the wishes and concerns ofthe child, as expressed to the court;
 (c) The child's interaction and interrelationship with thechild's parents, siblings, and any other person who maysignificantly affect the child's best interest
 (d) The child's adjustment to the child's home, school, andcommunity;
 (e) The mental and physical health of all persons involved inthe situation;
 (f) The parent more likely to honor and facilitatecourt-approved parenting time rights or visitation andcompanionship rights;
 (g) Whether either parent has failed to make all child supportpayments, including all arrearages, that are required of thatparent pursuant to a child support order under which that parentis an obligor;
 (h) Whether either parent previously has been convicted of orpleaded guilty to any criminal offense involving any act thatresulted in a child being an abused child or a neglected child; * * *
 (i) Whether the residential parent or one of the parentssubject to a shared parenting decree has continuously andwillfully denied the other parent's right to parenting time inaccordance with an order of the court;
 (j) Whether either parent has established a residence, or isplanning to establish a residence, outside this state.
 {¶ 9} On June 29, 2005, the Findings and Opinion were filed by the trial court and provided in pertinent part the following:
 Parental Rights and Responsibilities/Child Support In allocating parental rights and responsibilities, the Courtis required to view the evidence in light of a number ofstatutory factors. However, the main concern of the Court is thebest interest of the children. Although the age of the childrenis such that a conversation with them would not be meaningful,the Court heard substantial evidence concerning the relationshipof the children to their parents and others, relative parentingskills, interest in the children and concern for their well beingand the personal habits and mind sets of the parents. The Courtconsidered and reviewed the evidence in light of each of thepertinent factors contained in Section 3109.04(F)(1) of the OhioRevised Code.
 The evidence demonstrates that during the marriage, defendantwas employed outside the home and plaintiff stayed at home withthe children. The evidence showed that her care was, for the mostpart, adequate although on occasion the children wandered off orbecame involved in activities that could be considered unsafe.Defendant's care of the children during the marriage was lessactive than at present. He suffered some illness and was onmedication for a part of the time. There was also evidence of illtemper and aggressive behavior.
 The question, however, is not whether the circumstancesoccurring while the family unit was intact were good or bad, butwhat is presently in the best interests of the children and whatsituation the statutory factors favor.
 At some point, the marriage of the parties began to break downand the family unit deteriorated to the point that defendant wassummarily evicted from the home. Plaintiff began drinking inexcess and enjoying the company of others to the point where herrelationship with her children began to deteriorate. In December,(sic) 2004, defendant was granted emergency custody of thechildren. That Order remains in effect. Since that time,defendant has demonstrated that he has the skill and desire to bethe primary caretaker of the children. He has shown that he hastheir best interest at heart. He has given or provided forsatisfactory care of the children and has provided them with asafe environment. He and the children have bonded well. He hasaccomplished the things which plaintiff said that she would do ifshe were residential parent.
 Concerning visitation and parenting time, defendant seemsoverall most likely to facilitate visitation. Plaintiff hasundertaken to visit at inappropriate times and in aninappropriate condition and has several times failed to exerciseher visitation. On occasion, defendant has not permittedvisitation but overall has tried to provide plaintiff withadequate time with the children.
 On balance, defendant is the most suitable parent to be theresidential parent and primary custodian. Plaintiff shallcontinue to have parenting time with the children as at (sic)present, with a view to increasing to standard companionshipunder local Court Rules as her circumstances and relationshipwith the children warrant.
 {¶ 10} Furthermore, the Judgment Entry Decree of divorce with Minor Children on July 21, 2005, stated:
After considering all of the factors set forth in ORC §3109.04, which are more fully set forth in the Findings andOpinions of this Court which were filed on June 29, 2005,Defendant, Robert J. Wygant, is a fit and proper person to beentrusted and vested with the allocation of parental rights andresponsibilities relating to the parties' minor children, * * *.
 {¶ 11} After reviewing the record, we find that the trial court considered all of the necessary factors listed in R.C.3109.04(F)(1) and that there is sufficient, competent, credible evidence supporting the trial court's conclusion that the designation of Robert as the residential parent is in the best interest of the children. Accordingly, we find that the trial court did not abuse its discretion in designating Robert as the residential parent of the parties' minor children. Therefore, Robyn's first assignment of error is overruled.
 {¶ 12} In Robyn's second assignment of error, she asserts that the trial court erred when it ruled that the parties' real property at Lake Penage, Ontario, Canada was Robert's separate property and not marital property.
 {¶ 13} When allocating marital and separate property in a divorce case, the trial court is governed by R.C. 3105.171 and pertinent cases. R.C. 3105.171(A)(6)(a) provides,
"Separate property" means all real and personal property andany interest in real or personal property that is found by thecourt to be any of the following:
 (i) An inheritance by one spouse by bequest, devise, ordescent during the course of the marriage;
* * *
(vii) Any gift of any real or personal property or of aninterest in real or personal property that is made after the dateof the marriage and that is proven by clear and convincingevidence to have been given to only one spouse.
In addition, R.C. 3105.171(H) states,
Except as otherwise provided in this section, the holding oftitle to property by one spouse individually or by both spousesin a form of co-ownership does not determine whether the propertyis marital property or separate property.
 {¶ 14} When determining whether a trial court correctly classified property as marital or separate, the standard of review is whether that classification is against the manifest weight of the evidence. Welsh-Pojman v. Pojman, 3rd Dist. No. 3-03-12, 2003-Ohio-6708, at ¶ 10. The trial court's judgment must not be reversed as being against the manifest weight of the evidence if the trial court's classification is supported by competent, credible evidence. Id.
 {¶ 15} In this case, Robert purchased real estate and a cabin situated in Ontario, Canada which had previously belonged to his grandparents. Robert traveled to Canada to purchase the property in late October-early November of 2001 during the time the parties were married. On November 1, 2001, Robert and Faye Huhta, his grandmother, went to her bank and she cashed a bond worth $129,000 (Canadian). They then went to Robert's bank and he deposited the money from his grandmother into his sole account in Canada. Later that day, they went to Simmons Simmons, who was Robert's attorney, and Robert signed the paperwork for the purchase of the real estate and cabin.
 {¶ 16} The deed transferring the title from Mr. and Mrs. Cullens, for the real estate was prepared prior to Robert's trip to Canada to close on the real estate and was titled to both Robert and Robyn. Robert testified that Robyn's name was on the deed based upon the advice of his Canadian counsel to avoid the property reverting to the Canadian government in the event of his death. During the closing, Robyn was not present and did not participate in the purchase of the real estate; furthermore, she was unaware of when Robert actually purchased the real estate.
 {¶ 17} The entire proceeds for the purchase of the real property came from Robert's bank account where he had previously deposited the proceeds from his grandmother, Faye Huhta. No marital funds were used to purchase the real property. Faye Huhta testified that she gave the money to Robert for the purchase of the real property in Canada, on the day of the closing, with no intent that Robyn benefit from the transaction. She also testified that she was unaware that Robert's name was not the only name on the deed. Robert testified that his grandmother had told him that "the rest of my money is yours and it belongs to you" as his inheritance. He further testified that "when I found out that I could buy the camp back she was more than willing to pay for it" as his inheritance. Furthermore, there were no major improvements made to the property during the parties' marriage.
 {¶ 18} Robyn testified that the real estate was purchased with the money that Robert received from his grandmother and that no marital funds were used in the purchase of the real estate. In addition, she stated that she was not at the closing and had not spoken with the attorneys in Canada regarding the real estate. She testified that she was not aware of whether or not Robert's grandmother paid for the taxes or the insurance associated with the real estate in Canada. Furthermore, she did testify that Robert had said that he wanted her to have part of the real estate in Canada. However, Robert denied gifting any of the real estate to Robyn.
 {¶ 19} In addition, the trial court stated in its Findings and Opinion on June 29, 2005 the following:
 Division of Realty There are two tracts of real estate which may potentially bedivided between the parties, the island camp in Canada and * * *.The issue to be decided is the status of each tract as marital orseparate property. Then the Court must decide, as to the maritalreal estate how equitably to divide the property.
 The law defines marital and separate property. Sec.3105.17.(A)(3)(a) and (b) Revised Code of Ohio. Marital propertyis all the property owned by the parties or either of them andacquired during the marriage. Separate property includes propertyacquired by a spouse through inheritance or gift during themarriage. The party who claims that it is separate must provethat by clear and convincing evidence. However, the mere factthat it is jointly titled does not without more determine thatfact.
 As to the Canadian property, plaintiff claims that it ismarital. Defendant claims that it is not.
 In plaintiff's favor is the joint title, purchase duringmarriage, claimed marital use of the property and sharing within-laws. In defendant[`]s favor is the fact that this was afamily property, that his grandmother gave him the money to buyit, that it was put in joint name for estate planning purposesonly, that plaintiff did not attend the closing and did not showmuch interest in the property, that no marital funds went intothe purchase and no substantial marital funds into itsmaintenance. The evidence was that defendant's grandmother wouldnot have made a gift of the money or the property to plaintiffand intended only to make a gift to her grandson. Defendanttestified that he had no donative intent towards plaintiff.
 The Court finds that defendant has sustained his burden ofproof on this issue and that the property is the separateproperty of the defendant.
Furthermore, the Judgment Entry Decree of divorce with Minor Children on July 21, 2005, established that:
Defendant acquired real estate in Canada during the parties'marriage. The description of said real estate is more accuratelyset forth on the deed from Sandra Anne Cullen and Dennis Cullento Robert Wygant and Robyn Wygant, * * *. Despite this deed beingtitled in both Plaintiff and Defendant's name, the Court herebyfinds, after considering all evidence presented, ORC § 3105.171,and applicable case law, the same to be the separate property ofthe Defendant, Robert J. Wygant. This property was acquired byfunds gifted solely to Defendant by his grandmother. NeitherDefendant nor his grandmother intended to gift any portion ofthis property to Plaintiff. No marital funds went into thepurchase, maintenance or improvement of this real estate. * * *
 {¶ 20} Based on the evidence presented, we conclude that the trial court's decision establishing that the real property at Lake Penage, Ontario, Canada was Robert's separate property is supported by competent, credible evidence. Therefore, we find that the trial court did not err in classifying the real property in Canada as Robert's separate property. Accordingly, Robyn's second assignment of error is overruled.
 {¶ 21} For these reasons, the judgment of the Court of Common Pleas, Wyandot County, Ohio is affirmed.
Judgment affirmed.
 Bryant, P.J. and Rogers, J., concur.