OPINION *Page 2 
{¶ 1} The plaintiff-appellant, Paul T. Lawrence ("Paul") appeals the August 21, 2006 final Judgment Entry of the Court of Common Pleas of Marion County, Family Division, Ohio.
 {¶ 2} The plaintiff-appellant, Paul, and defendant-appellee, Theresa L. Rollison ("Theresa") were married on May 30, 1982 and no children were born as issue of the marriage. On January 8, 2002, the parties separated and lived separate and apart since that date. On October 13, 2004, Paul filed a complaint for divorce. On December 3, 2004, Theresa filed an answer to said complaint.
 {¶ 3} Due to unforeseen emergencies of the parties, counsel, and the court, this matter did not come on for final hearing until July 10, 2006. On that date, the trial court heard the testimony of both parties and the appraiser and accepted stipulations and exhibits of the parties. On August 21, 2006, the trial court rendered its decision granting Paul a divorce on the grounds of one year separation without cohabitation and ordering a division of marital assets and liabilities.
 {¶ 4} On September 19, 2006, Paul filed a notice of appeal alleging the following assignments of error:
 Assignment of Error I THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO AWARD APPELLANT HIS STIPULATED $20,000.00 INHERITANCE AS SEPARATE PROPERTY. *Page 3 
 Assignment of Error II THE TRIAL COURT ABUSED ITS DISCRETION BY ISSUING A RULING THAT WAS NOT CONSISTENT WITH THE FACTS PRESENTED, STIPULATION OF THE PARTIES, AND VERBAL ACKNOWLEDGEMENT OF THE FACTS.
 {¶ 5} Paul asserts in his first assignment of error that the trial court abused its discretion by failing to award him his stipulated $20,000.00 inheritance as separate property.
 {¶ 6} When allocating marital and separate property in a divorce case, the trial court is governed by R.C. 3105.171 and pertinent cases. R.C. 3105.171(A)(6)(a) provides,
 "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 (i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
 * * *
 (vii) Any gift of any real or personal property or of any interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.
 {¶ 7} In addition, R.C. 3105.171(H) states,
 Except as otherwise provided in this section, the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property. *Page 4 
 {¶ 8} When determining whether a trial court correctly classified property as marital or separate, the standard of review is whether that classification is against the manifest weight of the evidence.Welsh-Pojman v. Pojman, 3rd Dist. No. 3-03-12, 2003-Ohio-6708, at ¶ 10. The trial court's judgment must not be reversed as being against the manifest weight of the evidence if the trial court's classification is supported by competent, credible evidence. Id.
 {¶ 9} In this case, Paul inherited $20,000.00 from his father during the marriage. During the final hearing held on July 10, 2006, the parties stipulated to the following:
 Mr. Wilson: Your Honor, at this time, I would like to see if we could get a stipulation, I believe it has been agreed upon, but there was an inheritance of $20,000 that he received that he used as a down payment on the house, and I think we already agreed that that comes off. I want to see if we can get a stipulation on that.
 Mr. Luton: I will stipulate to that.
 * * *
 Mr. Wilson: Stipulate that he received the inheritance?
 Mr. Luton: Yes.
 Mr. Wilson: And that that inheritance was used as a down payment on the house?
 Mr. Luton: Yes.
 Mr. Wilson: Okay. *Page 5 
July 10, 2006 Hearing, p. 40-41. Specifically, the parties established and stipulated that Paul had inherited $20,000.00 from his father as separate property during the marriage and the inherited amount was used to purchase the property located at 5965 Marion Mt. Gilead Road, Caledonia, Ohio.
 {¶ 10} Paul further testified to the following:
 Q: Did you receive that inheritance?
 A: Yes, from my father.
 Q: Pardon?
 A: From my father, yes.
 Q: When did your father pass away?
 A: It was, let's see, it would have been `83, yeah, it would be February of `83.
 Q: Before you were married or after you were married?
 A: Shortly after, we weren't married a year.
 Q: And did you receive an inheritance from him at the time?
 A: Yes, I did.
 Q: And do you recall the amount of that inheritance?
 A: $20,000.
 Q: Showing you what's been marked as Exhibit Number 11, can you identify that?
 A: Yes, that's my father's last will and testament.
 Q: And does it specify in there under item Number 1 what your inheritance is to be?
 A: Yes, sir.
 Q: I believe it says, "I herein bequeath and give to my son the sum of $20,000, Paul T. Lawrence."
 A: Yes, sir.
 Q: And that's you?
 A: Uh-huh.
 Q: And did you receive that $20,000?
 A: Yes, I did.
 Q: And what did you do with the $20,000 that you received?
 A: Used it to put towards buying the property at 5965 Marion-Mt. Gilead Road.
 Q: The whole sum.
 A: Yes, sir. *Page 6 
 Q: And are you asking the Court in dividing the assets and liabilities that that be returned to you in total, the $20,000 in total?
 A: Yes, sir.
July 10, 2006 Hearing, p. 41-42. On August 21, 2006, the trial court stated the following with respect to the separate property acquired by Paul during the marriage:
 With respect to separate property, the Court finds that anything that either party acquired after January 8, 2002, is each individual's separate property. Also at issue was the husband's inheritance prior to the marriage in the amount of $20,000.00. Husband indicated that he used this money to purchase the real estate located at Marion Mt. Gilead Road. While his inheritance may be separate property, he provided no evidence tracing the money to the purchase of the real property located at Marion Mt. Gilead Road. Subsequent to the termination of the marriage husband inherited property in 2003. This inheritance is husband's separate property.
 {¶ 11} Based on the evidence presented, we conclude that although the trial court does acknowledge the inheritance by Paul of $20,000.00 from his father during the marriage, the trial court's failure to award Paul his stipulated $20,000.00 inheritance as separate property was against the weight of the evidence. The trial court stated that Paul provided no evidence tracing the money to the purchase of the real property located at Marion Mt. Gilead Road as its reason for not awarding the money back to Paul; however, as established above, *Page 7 
the parties stipulated and Paul testified that Paul did inherit $20,000.00 and that money was used towards the payment of the purchase of the property.
 It has long been held in Ohio that formal stipulations of fact submitted to a tribunal are in the nature of a special verdict by a jury, being the equivalent of proof made by both parties. Ish v. Crane (1862), 13 Ohio St. 574, 579-580, 1862 WL 56; Garrett v. Hanshue (1895), 53 Ohio St. 482, 495, 42 N.E. 256, 259-260; Ramsey v. Ernoko, Inc. (1991), 74 Ohio App.3d 749, 754, 600 N.E.2d 701, 704. "Thus, the stipulation perform[s] the same function as [a] factual determination rendered by a jury upon conflicting evidence." State v. F.O.E. Aerie 2295 (1988), 38 Ohio St.3d 53, 54, 526 N.E.2d 66, 67.
Hickey v. City of Toledo (2001), 143 Ohio App.3d 781, 788,758 N.E.2d 1228. Accordingly, the trial court erred in failing to award the stipulated $20,000.00 inheritance to Paul as separate property. Therefore, Paul's first assignment of error is sustained.
 {¶ 12} Paul argues in the second assignment of error that the trial court abused its discretion by issuing a ruling that was not consistent with the facts presented, the stipulations made by the parties and the verbal acknowledgement of the facts. Specifically, he alleges that the parties agreed that there was a debt due and owing to Bank One which was a mortgage secured by the property on Marion Mt. Gilead Road. The debt was a line of credit used by the parties to purchase the property located in Washington County, Ohio as well as a 1996 Chevrolet pickup truck. The only issue that the parties disagree about is the amount of the indebtedness as of January 8, 2002. *Page 8 
 {¶ 13} As stated previously, in divorce proceedings, the trial court must determine what constitutes marital and separate property. R.C. 3105.171(B). A trial court enjoys broad discretion in crafting an equitable division of marital property in a divorce proceeding. R.C. 3105.171(C)1); Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131,541 N.E.2d 597; Worthington v. Worthington (1986), 21 Ohio St.3d 73, 76,488 N.E.2d 150. The trial court must consider both the assets and liabilities, an equitable division of marital property necessarily implicates an equitable division of marital debt. R.C. 3105.171(F)(2).
 {¶ 14} A trial court's allocation of marital property and debt will not be reversed absent an abuse of discretion. Holcomb, supra at 131. An abuse of discretion connotes more than a mere error of judgment; it implies that the trial court's attitude is arbitrary, unreasonable, or unconscionable. See Masters v. Masters (1994), 69 Ohio St.3d 83, 85,630 N.E.2d 665; Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140. When applying this standard of review, we may not freely substitute our judgment for that of the trial court. Id.
 {¶ 15} In this case, the parties agreed that there was a debt due and owing to Bank One which was a mortgage secured by the property located at Marion Mt. Gilead Road. The debt was a line of credit used by the parties to purchase the real property located in Washington County, Ohio, as well as a 1996 Chevrolet pickup truck. *Page 9 
 {¶ 16} The parties only disagreed as to the amount of the indebtedness as of January 8, 2002. Paul testified that the outstanding balance in January of 2002 was $60,000.00, whereas Theresa testified that the balance was approximately $40,000.00. Specifically, Paul testified to the following in the final hearing:
 Q: Do you have any debts?
 A: Yes, we have a debt with Bank One.
 Q: Bank One?
 A: Yes, sir.
 * * *
 Q: Now, what is the debt to Bank One? Explain to the Court what that is.
 A: It was a — we took out a home equity line of credit to purchase the property in Washington County.
 Q: So the debt itself is a line of credit on what?
 A: Against the property, 5965 Marion — Mt. Gilead Road
 Q: Against the farm?
 A: Against the farm, yes.
 Q: And how much did you take out?
 A: It was between 60 and $65,000. I think when she left, it was right around $65,000. I think we've paid it down to close to $60,000.
 Q: How long before she left did you take out that line of credit?
 A: That'd been when we bought that property. Probably four or five years previous to that, I'm guessing. I don't know.
 Q: When did you buy the property?
 A: I'm not — I'm not sure. I don't have that figure in front of me.
 Q: If the records would show that you bought it in `87 would you disagree with that?
 A: That sounds probably about right. I don't know.
 Q: And what was the money used for, was it towards the purchase of Washington County?
 A: Yes. *Page 10 
 Q: And what else?
 A: And then I bought the `96 Chevrolet truck for my business. I bought that with that sum of money from that, and the `92 Chevrolet truck I bought later with that.
 Q: And are all those listed as assets on your assets and liabilities sheet?
 A: Yeah, they sure are, yeah.
 Q: And they've all been appraised?
 A: Yeah.
 Q: Now, how much do you have to pay monthly on your line of credit?
 A: It's right around $500 more or less.
 Q: And have you been paying that line of credit since you took it out?
 A: I sure have, yeah.
 Q: In `80 some or `90?
 A: Right
 Q: And has she helped you out at all in these payments?
 A: No.
 Q: Has she helped you out and made any assistance to the payments since 2002?
 A: No.
 Q: You said in January of 2002, you believed the balance to have been close to $60,000?
 A: It was close to there, yeah.
 Q: And you have continued to make the monthly payments since January of 2002?
 A: Yes.
 Q: Ever missed a month?
 A: No, never.
July 10, 2006 Hearing, p. 40-45. Furthermore, Theresa testified to the following:
 Q: Do you remember when you got the first mortgage on the property at Marion-Mt. Gilead Road?
 A: I think it was in `97.
 Q: And do you remember the amount?
 A: Roughly, the amount of the mortgage, the total amount of the mortgage, was $50,000.
 Q: Okay. *Page 11 
 A: That wasn't the amount that we used, but that was the total amount that we received.
 Q: Where did that money go?
 A: It went to purchase the Washington County property.
 Q: Okay. So that $50,000 paid the Washington County property?
 A: Yes.
 Q: And during the marriage, you paid that down to about $40,000?
 A: Yes, in a short time, we paid it down to $40,000.
 Q: And then the property was refinanced?
 A: It was.
 Q: And that was the mortgage that we've talked about, Exhibit B.
 A: Yes.
 Q: From December of 2000?
 A: Yes.
 Q: And you did not sign the note from that?
 A: I did not.
 Q: Why is that?
 A: I wanted my name off of that. Tim wanted to have the mortgage so we'd have a better — a greater amount, and he could purchase a truck with it. It's a revolving line of credit is what that mortgage is.
 Q: Okay. And you did not sign the note?
 A: I did not sign the note.
 Q: You didn't allow the mortgage to be filed?
 A: I granted that it could be filed. I did not sign as a borrower.
 Q: You told me you had some difficulty regarding Tim's truck being on that mortgage.
 * * *
 Q: [d]o you remember how much the truck was worth when he refinanced — when he refinanced, I guess?
 A: He told me it was $15,000. I found a paper later with the amount on it and I'd written it down. It was $15,000 and something.
 * * *
 Q: And what do you think is the fair amount of this mortgage *Page 12 that should be portioned as part of the marital debt?
 A: The part it was paid down to before his truck was added.
 Q: Okay. Do you recall how much that is.
 A: That was $40,000.
 Q: Okay. You think the mortgage should be — that's assessed as marital debt should be $40,000?
 A: Yes.
 Q: Okay. And so that would be less the amount that he used to buy the truck?
 A: That is correct.
 Q: These are her notes about the mortgage showing you what's been marked for identification purposes as Defendant's Exhibit M —
 A: Yes.
 Q: — could you just tell us what that is?
 A: It's my notes on what the mortgage originally was, what it's paid down to on different dates up to the time of my leaving. It was back up because Tim refinanced so he could purchase a truck.
 Q: And how much was it at that point?
 A: What it was paid down to? It was paid down to $40,769.
 Q: And what was the date of that?
 A: 2000. And refinanced it in 2000 a few days later, and the total amount for that refinance was for $65,000.
 Q: Okay. So of those amounts, you think the $40,000 — can you tell me the exact amount of the $40,000?
 A: Yes, I can, it's $40,769.86.
 Q: And you think that's the amount of the debt that should be assessed against this property?
 A: I do. I don't believe I should help Tim pay for the truck. * * *
July 10, 2006 Hearing, p. 131-135.
 {¶ 17} In the August 21, 2006 Judgment Entry, the trial court stated:
 The parties are the owners of real estate located at 5965 Marion Mt. Gilead Rd., Caledonia, Ohio 43314. They are also the owners of acreage located in Washington County, Ohio. The Court finds, based upon the appraisal performed by realtor and appraiser Don Davis, that the value of the property located in *Page 13 
Caledonia, Ohio, is $121,000.00. No evidence was provided to the Court to determine the balance of the mortgage on said property as of January 8, 2002. The Court finds that husband shall be awarded the property in Caledonia and shall pay wife the sum of $60,500.00 for her share.* * *
 It is further ORDERED that Husband shall be awarded the real estate located at 5965 Marion Mt. Gilead Rd., Caledonia, Ohio 43314 free and clear of any claim by wife. Husband shall pay wife the sum of $60,500.00 for her interest in said real property. Husband shall be responsible for the mortgage thereon and shall hold wife harmless. Wife shall execute a Quit claim Deed upon payment of her equity share.
 It is further ORDERED that the acreage in Washington County, Ohio, shall be sold by auction with the proceeds, after costs, divided equally.
 {¶ 18} Upon review of the evidence, we find that the trial court abused its discretion by issuing a ruling establishing that there was no evidence provided to determine the balance of the mortgage in the form of a line of credit against the property located at 5965 Marion Mt. Gilead Road. Both parties testified that a line of credit had been taken against the property and that said line of credit was marital debt; the only thing they disagreed upon was the amount of the indebtedness at the time the marriage was terminated. The trial court abused its discretion in stating that no evidence had been provided as to the line of credit and ordered that Paul be responsible for the entire marital debt when the parties had both acknowledged the debt as marital debt — at least in the amount to purchase the property located in Washington County, Ohio. Therefore, we find that Paul's *Page 14 
second assignment of error is sustained to the extent the line of credit was established by the parties as marital debt.
 {¶ 19} Accordingly, for the foregoing reasons, we reverse the August 21, 2006 final Judgment Entry of the Court of Common Pleas of Marion County, Family Division, Ohio and remand this case to that court to award Paul the stipulated $20,000.00 inheritance as separate property and to recalculate the marital debt on the Marion Mt. Gilead Road property consistent with this opinion.
Judgment reversed and remanded.
 PRESTON and WILLAMOWSKI, JJ., concur. *Page 1