OPINION
{¶ 1} Appellant, Shannon Knight, appeals the judgment entry overruling her objections to a magistrate's decision granting legal custody of her daughter, Payton Marie Knight, to appellee, Erick Domes, the child's natural father.
 {¶ 2} Payton Marie Knight was born on April 12, 1999 to appellant and appellee. At the time of the child's birth, the parties did not reside together and were not married. Notwithstanding their living arrangement, the parties shared Payton with one another, i.e. both parents had daily contact with the child.
 {¶ 3} On September 25, 2000, appellee filed a complaint for emergency relief in the Trumbull County Juvenile Court. Through his affidavit, appellee claimed that he was denied access to Payton without justification and petitioned the court to grant him immediate companionship with the child. As a result, on September 26, 2000, appellee obtained an ex parte emergency order granting him parenting time and companionship.
 {¶ 4} On October 5, 2000, the court held a hearing relating to the emergency order. Appellant requested that the order be vacated. In its October 11, 2000 order, the court determined that the order was consistent with the parties' custodial practices, but the matters of allocation of parental rights and responsibilities, including custody, support, and companionship, would be set for hearing.[1] Between October 5, 2000 and the date of the final hearing on September 11 and 12, 2002, neither appellant nor appellee was awarded custody of Payton.
 {¶ 5} On September 11 and 12, 2002, the matter proceeded to a contested hearing before Magistrate Alexander J. Savakis. After hearing testimony, the magistrate issued his findings of fact and conclusions of law, wherein appellee was named residential parent and legal custodian of Payton. Appellant filed objections to the magistrate's decision on September 24, 2002. The objections to the magistrate's decision were overruled by Judge Richard James on October 3, 2002.
 {¶ 6} Appellant now appeals the judgment entry overruling her objections. To this end, appellant assigns the following errors:
 {¶ 7} "[1.] The trial court committed reversible error by modifying the placement and award of custody of Payton Marie Knight from Appellant to Appellee.
 {¶ 8} "[2.] The decision of the trial court must be reversed due to a total lack of evidence in the record available to a reviewing court to determine if the decision of the trial court was pursuant to law."
 {¶ 9} Before addressing the merits of appellant's claims, we must note our concern with the upsurge of ex parte orders granted by lower courts. An ex parte emergency order is one brought for the benefit of one party only, without notice to or challenge from an adverse party. Because of the impact such orders have on due process, ex parte orders are ordinarily improper. Only extraordinary circumstances supported by affidavit or other evidence necessitating immediate action merit the issuance of an ex parte order. Ardrey v. Barks, Ltd. (June 19, 1979), 10th Dist. No. 78AP-762, 1979 Ohio App. LEXIS 11626, at 4.
 {¶ 10} In the instant case, the lower court granted appellee an ex parte emergency order. After a hearing wherein appellant sought to vacate the order, the court determined that the order was proper. However, the hearing occurred only nine days after the issuance of the order. Under the circumstances, a hearing was held with sufficient promptness such that appellee's interests in the visitation and custody of his daughter would not have been irreparably prejudiced. That is, appellee's interests would not be irreparably harmed by the nine day period between the issuance of the emergency order and the hearing wherein appellant sought to vacate said order. As such, we exhort lower courts to issue ex parte orders only where the alleged necessity clearly outweighs the adverse party's interests in challenging the motion or participating in the proceedings.
 {¶ 11} Moreover, there is a subtler, yet equally important due process basis for taking extra caution when granting ex parte orders; namely, the order may operate to irreparably and unfairly prejudice the party against whom the ex parte order is sought. That is, once a court makes a ruling in a party's favor, the court may find it difficult to reverse its position later in the proceedings, even when doing so is appropriate. The prejudice to which we refer can be cured by a full hearing with appropriate notice on the issue submitted for the court's review. Thus, we offer the following admonition: In the future, the lower court should approach motions for ex parte orders with greater caution, taking into consideration the full dimension of the due process rights implicated by such orders.
 {¶ 12} In her first assignment of error, appellant argues that the court erred by transferring custody of Payton from her to appellee without sufficiently detailing its basis. Specifically, appellant argues that R.C. 3109.04(E)(1)(a) governs changes in custody. Said statute sets forth a three-prong standard to guide a court's analysis when transferring custody from one parent to another. To wit, the party seeking the change must: establish a change of circumstances; establish that the modification is necessary to serve the child's best interest; and demonstrate that the harm likely to be caused by a change of environment is outweighed by the advantages of the change. See Schiavonev. Antonelli (Dec. 10, 1993), 11th Dist. No. 92-T-4794, 1993 Ohio App. LEXIS 5891, at 7. To the extent that the court failed to address each statutory element, appellant concludes, the court erroneously awarded custody to appellee. We disagree.
 {¶ 13} R.C. 3109.04(E)(1)(a) governs the modification of an existing decree allocating parental rights and responsibilities. See, e.g., Anthony v. Wolfram (Sept. 29, 1999), 9th Dist. No. 98CA007129, 1999 Ohio App. LEXIS 4520, at 3. In the current matter, no past decree was ever issued. Consequently, there was no extant decree that the court might modify.
 {¶ 14} Where no prior order exists, R.C. 3109.042 provides:
 {¶ 15} "Custody rights of unmarried mother. An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian. A court designating the residential parent and legal custodian of a child described in this section shall treat the mother and father as standing upon an equality when making the designation."
 {¶ 16} This statute, effective on January 1, 1998, codifies the concept of the mother's "implied custody" set forth in In re Yates
(1984), 18 Ohio App.3d 95, thereby requiring custody disputes of unmarried parents to be resolved by the courts. In the Matter of Ramey
(Dec. 22, 1999), 4th Dist. Nos 98CA4 and 98CA28, 1999 Ohio App. LEXIS 6390, at 13. Under such circumstances, the trial court shall not use the formula set forth in R.C. 3109.04(E)(1)(a); alternatively, the court must determine custody based on the best interests of the child pursuant to R.C. 3109.04(B)(1). Anthony, supra, at 4, citing In re Byrd (1981),66 Ohio St.2d 334, paragraph two of syllabus. See, also, In re Ramey,
supra, at 14.
 {¶ 17} Following R.C. 3109.04(B)(1), the court must apply the "best interests" test of R.C. 3109.04(F) and the factors listed therein. The trial court must balance the competing interests of the natural parents with the child's best interests to determine if either parent would be a suitable custodian for the child. However, where a residential parent has been designated, R.C. 3109.04 provides for a strong presumption in favor of retaining the present residential parent. Brown v. Rehder (June 28, 1991), 11th Dist. No. 90-G-1576, 1991 Ohio App. LEXIS 3097, at 7. Alternatively, it is important to emphasize that R.C. 3109.042 requires the court to treat each parent as standing upon equal footing. Therefore, unlike R.C. 3109.04, when a court is petitioned pursuant to R.C. 3109.042, neither party is entitled to a strong presumption in his or her favor.[2]
 {¶ 18} A review of the record demonstrates that the magistrate fully complied with the analysis mandated by R.C. 3109.04(F). Specifically, the magistrate applied the 3109.04(F)(1) factors to determine the child's best interests. Moreover, pursuant to R.C.3109.04(F)(2) the court examined whether shared parenting would be in Payton's best interests. In so doing, the court concluded that Payton be placed into the legal custody of appellee with companionship to appellant on specific dates and times. Therefore, appellant's contention that the court failed to apply the appropriate standard is misplaced.
 {¶ 19} For these reasons, appellant's first assignment of error has no merit.
 {¶ 20} In her second assignment of error, appellant argues that the award of custody is not supported by a substantial amount of credible and competent evidence. Appellant asserts that the inaudibility of the video-taped hearing makes it impossible for this court to review the evidence set forth at the hearing. Consequently, appellant concludes, that the magistrate's decision and the judge's adoption of the same is effectively grounded on a "total lack of evidence." We disagree.
 {¶ 21} Initially, appellant failed to raise any objection to the trial court concerning the content and/or sufficiency of the evidence on which the magistrate relied in rendering his decision. A party must file appropriate objections to a magistrate's decision to preserve the issue for appellate review. Batsch v. Tress (Sept. 7, 2001), 11th Dist. No. 2000-P-0022, 2001 Ohio App. LEXIS 3990, at 9-10. In the instant matter, appellant did not so object and therefore has waived this issue absent plain error.[3] Id. at 10. However, even if appellant made the proper objections, her claims are without merit.
 {¶ 22} The magistrate conducted the hearing upon which the award of custody was based. The magistrate's decision reflects the details of the testimony during the hearing. The facts of the case were precisely applied to the statutory factors set forth in both R.C. 3109.04(F)(1) and3109.04(F)(2) towards the conclusion that "it would be in Payton's best interest to be in the care of her father."
 {¶ 23} To the extent that both the videotaped hearing and its attendant transcript are virtually unintelligible due to inaudible witness testimony, appellant is correct that we cannot perform a thorough review of the proceedings. However, this does not imply that the magistrate's decision is based upon a "total lack of evidence." In fact, the lengthy magistrate's decision provides this court with ample evidence of the testimony presented at the hearing. As such, we hold that the magistrate's decision is based upon adequate evidence applied to the proper statutory standards.
 {¶ 24} Appellant further argues that this court should reverse the judge's decision overruling her objections to the magistrate's decision because the proceedings do not admit to review. Again, appellant failed to make an explicit objection to the trial court regarding the inaudibility of the videotaped proceedings. Hence, pursuant to Batsch,
supra, she has waived this issue absent plain error.
 {¶ 25} Waiver aside, appellant's claim deserves some attention. To wit, Juv.R. 37(A) requires a juvenile court to "make a record of adjudicatory and dispositional proceedings in abuse, neglect, dependent, unruly, and delinquent cases; permanent custody cases; and proceedings before magistrates."[4]
 {¶ 26} The current matter was conducted before a magistrate.[5]
Hence, the proceedings fall within the ambit of Juv.R. 37(A), i.e., the juvenile court was obligated to record the proceedings. In compliance with this mandate, the Trumbull County Family Court provided a means of recording the proceedings, i.e., a videotaping device. Appellant rightfully notes that the tape of the hearing is inaudible with the exception of the magistrate's inquiries and comments. However, despite this deficiency, we are able to ascertain the substance of the hearing from the magistrate's detailed factual findings. Without recourse to the lucid findings set forth in the magistrate's order, we would have nothing to review. Hence, the substance of the proceedings admit to review to the extent that they are reflected in the detail of the magistrate's order.
 {¶ 27} However, we caution the lower court to improve the quality of its recording practices as well as its equipment. In our current technological climate, adequate means are available to create an audible record for the transcription of proceedings on matters which affect families in distress. Without the magistrate's thorough findings, we would have nothing to review; thus, to avoid a future Juv.R. 37(A) error, we exhort the lower court to make certain its recording devices are sufficient and functioning properly before conducting a hearing subject to that procedural rule.
 {¶ 28} Moreover, we are mindful that App.R. 9(C)[6] permits a party to prepare a statement of the proceedings where no record is otherwise available. Further, Civ.R. 53(E) permits a party to object to the trial court. Appellant failed to utilize either procedural mechanism. Nevertheless, our decision to affirm the lower court is not based upon appellant's failure to provide a App.R. 9(C) statement of the proceedings or to utilize Civ.R. 53(E). Rather, we affirm the lower court precisely because the magistrate's findings, derived from the hearing, set forth factual details sufficiently specific to permit our review. After reviewing the magistrate's findings and his conclusions in conjunction with the judgment entry adopting the magistrate's order, we find no error.
 {¶ 29} For the foregoing reasons, appellant's assignments of error are not well taken and the decision of the Trumbull County Court of Common Pleas, Juvenile Division is hereby affirmed.
Judgment affirmed.
Judith A. Christley and Diane V. Grendell, JJ., concur.
[1] In its October 11, 2000 order, the court notes that there had been no prior custody order in the matter. In effect, before the current matter was filed, the parties had amenably shared custody of the child without judicial interference.
[2] Despite the notion of "implied custody" which an unmarried mother enjoys, said custody carries no superordinate weight under R.C. 3109.042.
[3] Although its roots are in criminal law, the Supreme Court of Ohio has recognized the application of plain error in civil cases under exceptional and rare circumstances. Goldfuss v. Davidson (1997),79 Ohio St.3d 116, 121. Plain error involves any error or defect that affects an individual's substantial rights, which is not brought to the attention of the trial court through an objection. Batsch, supra, at 11.
[4] We have previously addressed Juv.R. 37(A) in the specific context of delinquency proceedings. See In the Matter of Dikun (Nov. 28, 1997), 11th Dist. No. 96-T-5558, 1997 WL 752630. In Dikun, we reversed the lower court for failure to record a juvenile's plea hearing, i.e. we held that the failure of the juvenile court to record adjudicatory or dispositional hearings is contrary to Juv.R 37(A). The current matter can be distinguished from Dikun in that it is civil in nature and the court did record the proceedings.
[5] Despite the contextual similarities, the case sub judice simply involves the allocation of parental rights and not an adjudicatory, dispositional, or permanent custody proceeding. Juv.R. 2(Y) defines permanent custody as "a legal status that vests in a public children services agency or a private child placing agency, all parental rights, duties, and obligations, including the right to consent to adoption and divests the natural parents or adoptive parents of any and all parental rights, privileges, and obligations, including all residual rights and obligations." Hence, without the involvement of a public or private agency, the term "permanent custody" is inapplicable.
[6] App.R. 9(C) provides, in part: "If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection."