OPINION
{¶ 1} The plaintiff-appellant, Tonya A. Self ("Tonya") appeals the February 6, 2006 Judgment entry of the Common Pleas Court of Mercer County, Ohio, Juvenile Division designating defendant-appellee, Kevin Turner ("Kevin") as the residential parent.
 {¶ 2} On April 14, 1998, Chase Turner ("Chase") was born to Tonya and Kevin, an unmarried couple. Tonya was granted custody of Chase pursuant to R.C. 3109.042, which designates an unmarried female giving birth to a child to be the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another to be the residential parent. Tonya allowed parenting time to Kevin although no official visitation schedule was ever entered. On March 4, 2005, Kevin filed a motion for change of residential parent and legal custodian alleging there had been a change of circumstances which required a modification of the prior orders to serve the best interest of the minor child, Chase. Specifically, Chase had been residing with Kevin on a continual basis for three years.
 {¶ 3} On September 26, 2005, the juvenile court held a hearing on Kevin's motion. On February 6, 2006, the juvenile court filed its judgment entry establishing Kevin as the residential parent and legal custodian of Chase. On March 3, 2006, Tonya filed a notice of appeal alleging the following assignments of error:
Assignment of Error I
 THE JUVENILE COURT ERRED AS A MATTER OF LAW BY NAMING [TURNER]THE RESIDENTIAL PARENT OF THE PARTIES MINOR CHILD AS THAT IS NOTIN THE CHILD'S BEST INTEREST.
 Assignment of Error II
 THE JUVENILE COURT ERRED BY FAILING TO MAKE A FINDING THAT THEHARM LIKELY TO BE CAUSED BY A CHANGE OF ENVIRONMENT IS OUTWEIGHEDBY THE ADVANTAGES OF THE CHANGE OF ENVIRONMENT TO THE CHILD.
 {¶ 4} Tonya's assignments of error shall be addressed together because both assignments of error pose issues concerning the allocation of parental rights and responsibilities. Tonya asserts in her first assignment of error that the granting of residential parent status to Kevin was not in Chase's best interests. She claims in her second assignment of error that the trial court erred by not making a finding that the harm of the change of custody is outweighed by the benefits of that change.
 {¶ 5} "A trial court's decision regarding the allocation of parental rights and responsibilities that is supported by substantial competent and credible evidence will not be reversed on appeal absent an abuse of discretion. * * * In determining the allocation of parental rights and responsibilities, the trial court is granted broad discretion." Wygant v. Wygant, 3rd Dist. No. 16-05-16, 2006-Ohio-1660, at ¶ 6. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 6} Pursuant to R.C. 3109.04(B)(1),
When making the allocation of the parental rights andresponsibilities for the care of the children under this sectionin an original proceeding or in any proceeding formodification of a prior order of the court making the allocation,the court shall take into account that which would be in the bestinterest of the children. In determining the child's bestinterest for purposes of making its allocation of the parentalrights and responsibilities for the care of the child and forpurposes of resolving any issues related to the making of thatallocation, the court, in its discretion, may and, upon therequest of either party, shall interview in chambers any or allof the involved children regarding their wishes and concerns withrespect to the allocation.
R.C. 3109.04(E)(1)(a) provides,
The court shall not modify a prior decree allocatingparental rights and responsibilities for the care of childrenunless it finds, based on facts that have arisen since the priordecree or that were unknown to the court at the time of the priordecree, that a change has occurred in the circumstances of thechild, the child's residential parent, or either of the parentssubject to a shared parenting decree, and that the modificationis necessary to serve the best interest of the child. In applyingthese standards, the court shall retain the residential parentdesignated by the prior decree or the prior shared parentingdecree, unless a modification is in the best interest of thechild and one of the following applies:
 (i) The residential parent agrees to a change in theresidential parent or both parents under a shared parentingdecree agree to a change in the designation of residentialparent.
 (ii) The child, with the consent of the residential parent orof both parents under a shared parenting decree, has beenintegrated into the family of the person seeking to become theresidential parent.
 (iii) The harm likely to be caused by a change of environmentis outweighed by the advantages of the change of environment tothe child.
R.C. 3109.04(E)(1)(a) governs the modification of an existing decree allocating parental rights and responsibilities, and does not apply when the trial court makes an original designation of the residential parent and legal guardian. In re Knight,
11th Dist. No. 2002-T-0158, 2003-Ohio-7222, at ¶ 13, citingAnthony v. Wolfram (Sept. 29, 1999), 9th Dist. No. 98CA007129, at 3. In In re Knight, the trial court determined that there could not be a modification of a decree when there was no past decree allocating parental rights and responsibilities in the first place. Id. In the case at hand, no past decree allocating parental rights and responsibilities was ever issued. Accordingly, there was no prior decree that the trial court might modify.
 {¶ 7} Where no prior decree exists, R.C. 3109.042 provides that:
An unmarried female who gives birth to a child is the soleresidential parent and legal custodian of the child until a courtof competent jurisdiction issues an order designating anotherperson as the residential parent and legal custodian. A courtdesignating the residential parent and legal custodian of a childdescribed in this section shall treat the mother and father asstanding upon an equality when making the designation.
R.C. 3109.042 confers a default status on Tonya as the residential parent until an order is issued by the trial court designating the residential parent and legal guardian. It is not, in and of itself, a decree allocating parental rights and responsibilities and, under these circumstances, the trial court's custody determination need only be based on the best interests of the child according to R.C. 3109.04(B)(1) rather than the requirements set forth under R.C. 3109.04(E)(1)(a).Knight, 2003-Ohio-2777, at ¶ 16.
 {¶ 8} Following R.C. 3109.04(B)(1), the trial court must apply the "best interest" test of R.C. 3109.04(F) and the factors listed therein. The trial court must balance the competing interests of the natural parents with the child's best interests to determine if either parent would be a suitable custodian for the child. R.C. 3109.04; Knight, 2003-Ohio-2777, at ¶ 17. R.C.3109.042 requires the trial court to treat each parent as standing upon equal footing. Id. Therefore, unlike R.C. 3109.04, when a court is petitioned pursuant to R.C. 3109.042, neither party is entitled to a strong presumption in his or her favor.
 {¶ 9} Upon a review of the September 26, 2005 Motion Hearing and the juvenile court's judgment entry, it is clear that the trial court did not err in establishing Kevin as the residential parent and the legal custodian of Chase. The trial court states that it heard extensive testimony. Specifically, Kevin testified that he had maintained a stable residence for the past five years in a two bedroom apartment, while Tonya testified that she had moved several times over the past five years. She further testified that she had moved to North Carolina with the intent of marrying and staying in North Carolina without informing Kevin that she was moving there with Chase. She ended up not marrying and returning to Ohio with Chase and her other three children. Following their return home, Tonya's three other children and Chase started living with their respective fathers on a regular basis. The custody of her three other children changed at that time. Tonya testified that she is currently living in a private residence owned by her significant other and has been residing there since October of 2004. She also noted that she had dated her significant other for three years; however, they had split up for about five months during the course of the three years.
 {¶ 10} Testimony was also presented as to both parent's contact with Chase's teachers and attendance at school related meetings. Kevin testified with supporting exhibits that he had been contacted to sign a retention form to retain Chase for a second year of kindergarten by Chase's teacher because Tonya did not come in to sign the paper. In the note requesting Kevin's signature, it was noted that Kevin was not the residential parent but that the residential parent had been contacted and had not replied. Tonya testified that she had also signed a similar paper; however, she did not bring a copy of the retention form she signed with her. Furthermore, Kevin testified with supporting exhibits that he had filled out the emergency medical form for Chase providing authorization in case Chase got hurt or sick at school as Chase's parent.
 {¶ 11} There was also testimony as to each parent's employment. Kevin testified that he was employed at Ross Aluminum in Sidney, Ohio. He began employment with the company in October of 2004 when he was laid off from a long time job due to down sizing. He was provided a letter of recommendation from his previous employer. He works second shift at Ross Aluminum but anticipates moving to first shift as soon as he is eligible. He makes $10.50 per hour. Tonya testified that she works first shift and earns $9.00 per hour. She further testified that she has three other children, two of whom she pays child support for in the amount of $93.00 per week. All of her children currently reside with their respective fathers.
 {¶ 12} Testimony was also given by Kevin and Tonya discussing the shared parenting and visitation of Chase to this point. Kevin testified that Tonya would "never call. She'd just pop in whenever she felt like it and say, I'm taking him. And there's times my mother's been there, people's been there, and she'll just come in unannounced, wouldn't call nobody, just pop right in and say, I'm taking him, and that's what she would do." Motion Hearing Trans. p. 27. He stated that Chase had to repeat kindergarten because "she was coming in to get him every other day and that was a little too much for him. And there was a time that the teacher called me in and said the days that he was with her, he would come in the classroom and just lay his head on the table because he'd be so tired from not getting enough sleep, and he couldn't perform his duties at school." Id at 31-32. He also testified that "[a] couple times * * * Angie [Tonya] came and took him [Chase] and didn't inform no one that she'd took him" from after school and another time she went to the school and "told the school he had a doctor's appointment, and the school was not going to let her take him because she didn't have paperwork stating that she was the custodial parent for the simple fact that they saw more of me [Kevin] than they did her." Id. at 37-38. Kevin stated that Tonya tended to pick Chase up on Monday and Wednesday and every other weekend. Furthermore, Kevin testified that he had "never kept Angie [Tonya] from seeing Chase" and he felt that it was "in the best interest of Chase that there be communication between the parents." Id at 49-50. He emphasized that Tonya had not communicated with him about her going to North Carolina with Chase, nor had she communicated with him about a set schedule for visitation with Chase.
 {¶ 13} Tonya testified that the parenting arrangement between Kevin and herself was every other day. Specifically, she testified that she "would pick Chase up on Mondays and Wednesdays after school at 4 o'clock, and I would keep him overnight sometimes; and then Kevin would have him the other nights." Motion Hearing Trans. p. 79. She stated that this arrangement had "been going on for two, three years." Id.
 {¶ 14} The trial court stated in its February 6, 2006 Judgment Entry,
The court heard extensive testimony as to the amount of timethat the minor child, Chase, has spent with each parent. Inlistening to the testimony, it appears that the child has spentsubstantial time with both parents in recent years.
* * *
Father's residence has been stable while mother has movedseveral times.
 Testimony was heard as to Chase's interaction with both setsof siblings. It appeared that he was comfortable and hadestablished a good relationship with all of his siblings.Testimony indicated that both parent's homes were adequate forChase while neither residence having any distinct advantages.Father rents an apartment where he has lived for a substantialamount of time. Mother resides in a private residence owned byher significant other. She has lived there since October of2004.
 Testimony was presented as to both mother and father's contactwith their son's teachers and attendance at school relatedmeetings. Father has participated equally, if not more, thanmother.
 Chase, through testimony, appears to have a good relationshipwith both of his parents. Both parents feel that it is in Chase'sbest interest for them to be the residential parent. There wastestimony as to the fact that mother would occasionally takeChase out of school without notice to father and that there waslittle or no conversation between the parents as to when shewould remove him. This would occasionally happen during timesfather had Chase. There was also testimony that mother had movedwith Chase to North Carolina and did not advise father that shewas moving nor did she advise him of where she was living. Theonly contact between the parents was through father's sister.Father has been active in Chase's life at the time.
* * *
The court in applying 3109.04 has considered all of theprovisions contained therein. The court finds that it is in thebest interest of the minor child, Chase, to reside with hisfather, Kevin Turner, during the school year, with mother to havevisitation as the parties agree or pursuant to this court's localrule.
 {¶ 15} Therefore, it is clear that the trial court fully complied with the analysis mandated by R.C. 3109.04(F). Specifically, the trial court applied the 3109.04(F) factors to determine the child's best interests. In so doing, the trial court concluded that Chase be placed into the legal custody of Kevin with Tonya receiving visitation rights as the parties agree or pursuant to the trial court's local rule.
 {¶ 16} Therefore, Tonya's first assignment of error is overruled because the trial court did not abuse its discretion in naming Kevin as the residential parent and legal custodian. Her second assignment of error is moot because the trial court was not required to determine whether the potential benefits of the change in environment outweigh the potential harm caused by the change according to R.C. 3109.042 and R.C. 3109.04(B)(1) because no prior decree addressed the allocation of parental rights and responsibilities. Accordingly, the February 6, 2006 Judgment entry of the Common Pleas Court of Mercer County, Ohio, Juvenile Division designating Kevin as the residential parent is affirmed.
Judgment affirmed.
 Cupp, J., concurs.