OPINION
{¶ 1} Defendant-appellant Gidget Wolff appeals from the November 2, 2005, Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Gidget Wolff and appellee Kenneth Horning are the biological parents of Daisy Marie Wolff, who was born on August 1, 1996. Appellant and appellee were never married, but were living together at the time of Daisy's birth. At the time of Daisy's birth, appellee did not sign the birth certificate.
 {¶ 3} Appellee and appellant continued living together until October of 2003, when appellee moved out of the house. Appellee returned approximately a week later with a woman claiming to be appellee's girlfriend. As a result, an altercation ensued between appellant and appellee. While appellee was initially charged with domestic violence, he later pleaded no contest to a lesser charge of disorderly conduct with persistence.[1]
 {¶ 4} On March 24, 2004, approximately five months after the parties separated, appellee filed a complaint to establish paternity of Daisy with the Stark County Court of Common Pleas, Juvenile Division. Appellee, in his complaint, indicated that he had attempted to establish paternity administratively through the Child Support Enforcement Agency, but that appellant had failed to appear for scheduled genetic testing on three separate dates. After a paternity test indicated that there was a 99.99% probability that appellee was Daisy's biological father, the trial court, pursuant to a Judgment Entry Decree of Paternity filed on August 13, 2004, found that appellee was Daisy's biological and legal father.[2] Appellee was not ordered to pay child support at that time.
 {¶ 5} Subsequently, on September 2, 2004, appellee filed a "Motion and/or complaint to Establish Companionship, Custody and Allocation of Parental Rights and Responsibilities, or in the Alternative Shared Parenting."[3] Appellee, in his motion, noted that "[n]o court has issued any orders awarding custody or allocating parental rights and responsibilities of the minor child of the parties." Appellant filed a motion in opposition to appellee's motion on November 2, 2004, in which she sought child support for Daisy. Appellant, in her motion, indicated that "[f]rom October 12, 2003 until present, [appellee] has provided no financial support for the child." Pursuant to a Judgment Entry filed on December 14, 2004, appellee was ordered to pay temporary child support in the amount of $293.96 per month.
 {¶ 6} Thereafter, on June 14, 2005, appellee filed a "Motion Requesting Modification of Interim Orders and Request for an Immediate Oral Hearing," seeking custody of Daisy. Appellee, in his motion, noted that the Guardian Ad Litem in this case, in his report filed on June 14, 2005, had requested that appellee be designated Daisy's residential parent.
 {¶ 7} A three day trial commenced on October 24, 2005. As memorialized in a Judgment Entry filed on November 2, 2005, the trial court granted legal custody and residential parent status of Daisy to appellee. The trial court, in its entry, stated, in relevant part, as follows;" Even though this is a juvenile court case, the Court is referred to [Section]3109.04 of the Ohio Revised Code when determining the allocation of parental rights and responsibilities for the care of the child. The court is instructed to take into account that which would be in the best interest of the child."
 {¶ 8} Appellant now raises the following assignments of error on appeal:
 {¶ 9} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT APPLIED THE BEST INTEREST OF THE CHILD TEST RATHER THAN THE CHANGE OF CIRCUM STANCE [SIC] TEST IN NAMING THE DEFENDANT RESIDENTIAL PARENT OF THE MINOR CHILD.
 {¶ 10} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO CONSIDER FATHER'S HISTORY OF DOMESTIC VIOLENCE AND FACT THAT FATHER FORCIBLY REMOVED MOTHER AND CHILD FROM THEIR JOINT RESIDENCE."
 I {¶ 11} Appellant, in her first assignment of error, argues that the trial court erred in treating the proceedings as an initial custody determination and applying the best interest of the child standard set forth in R.C. 3109.04. Appellant specifically contends that the trial court should have applied the change of circumstances test set forth in R.C. 3109.04(E)(1)(a) because appellant had physical custody of Daisy and the trial court had not established a child support order. We disagree.
 {¶ 12} R.C. 3109.04(B)(1) governs initial custody awards. Such section states, in relevant part, as follows: "When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children."
 {¶ 13} In contrast, R.C. 3109.04(E)(1)(a) governs modifications of prior custody decrees. Such section states as follows: "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred inthe circumstances of the child, the child's residential parent, oreither of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 {¶ 14} "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 {¶ 15} "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 {¶ 16} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." (Emphasis added).
 {¶ 17} As noted by the court in In the Matter of Knight, Trumbull App. No. 2002-T-0158, 2003-Ohio-7222, at paragraph 13, R.C. 3109.04(E)(1)(a) governs the modification of an existing decree allocating parental rights and responsibilities, and is not applicable when the trial court makes an original designation of the residential parent and legal guardian. The court, in In the Matter of Knight, held that there could not be a modification of a decree when there was no past decree allocating parental rights and responsibilities in the first place. Id. See also Self v. Turner, Mercer App. No. 10-0607, 2006-Ohio-6197. Similarly, since, in the case sub judice, there was no past decree allocating parental rights and responsibilities, there was no prior decree that the trial court could modify.
 {¶ 18} In such case, R.C. 3109.042 applies. Such statute states as follows: "An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian. A court designating the residential parent and legal custodian of a child described in this section shall treat the mother and father as standing upon an equality when making the designation." R.C. R.C. 3109.42 became effective on January 1, 1998, which is after the date of many of the cases cited by appellant. Such section "codifies the concept of the mother's `implied custody' set forth in In re Yates (1094), 18 Ohio App.3d 95,481 N.E.2d 646, thereby requiring custody disputes of unmarried parents to be resolved by the courts." See Knight, supra, at paragraph 16.
 {¶ 19} As noted by the court in Self v. Turner, supra., "R.C. 3109.042
confers a default status on [the mother] as the residential parent until an order is issued by the trial court designating the residential parent and legal guardian. It is not, in and of itself, a decree allocating parental rights and responsibilities and, under these circumstances, the trial court's custody determination need only be based on the best interests of the child according to R.C. 3109.04(B)(1) rather than the requirements set forth under R.C. 3109 .04(E)(1)(a). Knight, 2003-Ohio-2777, at ¶ 16.
 {¶ 20} "Following R.C. 3109.04(B)(1), the trial court must apply the `best interest' test of R.C. 3109.04(F) and the factors listed therein. The trial court must balance the competing interests of the natural parents with the child's best interests to determine if either parent would be a suitable custodian for the child. R.C. 3109.04;Knight, 2003-Ohio-2777, at ¶ 17. R.C. 3109.042 requires the trial court to treat each parent as standing upon equal footing. Id. Therefore, unlike R.C. 3109.04, when a court is petitioned pursuant to R.C.3109.042, neither party is entitled to a strong presumption in his or her favor." Id. at paragraphs 7-8.
 {¶ 21} Based on the foregoing, we find that the trial court did not err in treating the proceedings as an initial custody determination and applying the best interest of the child standard set forth in R.C.3109.04.
 {¶ 22} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 23} Appellant, in her second assignment of error, contends that the trial court erred in failing to consider appellee's history of domestic violence and the fact that appellee forcibly removed appellant and Daisy from the parties' joint residence. We disagree.
 {¶ 24} As is stated above, after appellant returned to the parties' residence with a new girlfriend, there was an altercation between appellant and appellee and appellee was charged with domestic violence. Appellee subsequently pleaded no contest to a reduced charge of disorderly conduct with persistence and was found guilty of the same.
 {¶ 25} Contrary to appellant's assertion, the trial court did consider appellee's "alleged history of domestic violence." The trial court, in its November 4, 2005, Judgment Entry, noted that it was concerned about appellee's conviction for disorderly conduct with persistence. However, the court also noted that appellee had not since engaged in similar conduct despite verbal altercations between the parties which, the court noted, could have gotten out of hand.
 {¶ 26} Clearly, while the trial court did consider appellee's conviction, it placed greater weight on the thorough report of the Guardian ad Litem and the report from Dr. Patti Milsaps-Linger, a psychologist. The Guardian ad Litem, in his lengthy report, recommended that appellee be designated the residential parent. In so recommending, the Guardian Ad Litem stated as follows:
 {¶ 27} "Gidget and Daisy reside with Gidget's grandparents, mother, and uncle. There is no separate bed for Daisy and she sleeps with her mother. Daisy's counselor reports that when Daisy and Gidget spend the night with Gidget's boyfriend of four months, Daisy sleeps with them, which Gidget calls a family tradition sleeping in the family bed. Daisy's teacher reports that Daisy is below grade level in math, reading, and writing, and recommends that she repeat the third grade. She recommended an after-school reading program, but Gidget did not have her attend. Gidget is `not having any of it' regarding the recommendation for Daisy to repeat third grade. Daisy was tardy 9 days and absent from school 27 times this year, a continuing problem from her previous school. Daisy's counselor reported that the teacher recommended summer school, but Gidget indicated that she would be moving to another school district with Daisy anyway. In summary, Gidget is not providing appropriate living accommodations, she is not supporting Daisy's education appropriately, she is planning further disruption in educational placement, and she is exposing Daisy to a new boyfriend in an inappropriate manner.
 {¶ 28} "Based on MMPI results, Ken appears to be more psychologically stable than Gidget. Daisy shows indications of Parental Alienation Syndrome. Apparently, Gidget would not facilitate any relationship between Daisy and her father absent the court's intervention."
 {¶ 29} Dr. Milsaps-Linger, who conducted a parental alienation evaluation for the trial court, stated in her report that appellant's responses to the Minnesota Multiphasic Personality Inventory-2 test "resulted in a profile the indicated significant mental health issues" and that appellant had a "tendency toward hypochondriasis." She further opined that appellant's general profile suggested a "mixed affective disturbance" and that appellant's "current level of day-to-day coping and self-sufficiency appears uneven and disorganized."
 {¶ 30} In short, from our review of the trial court's November 4, 2005 Judgment Entry, it is apparent that the trial court considered all of the best interest factors set forth in R.C. 3109.04(F). While the allegations of domestic violence were one factor that the trial court considered in its extensive findings of fact and conclusions of law, it clearly found that, based on consideration of all of the factors, it was in Daisy's best interest for custody to be granted to appellee.
 {¶ 31} Appellant's second assignment of error is, therefore, overruled.
 {¶ 32} Accordingly, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
Edwards, J. Farmer, P.J. and Boggins, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] Persistent disorderly conduct requires persistence after reasonable warning of request to desist. See R.C. 2917.11(E)(3).
[2] Both appellant and appellee signed the August 13, 2004 Judgment Entry indicating their approval of thesame.
[3] It appears from the facts that appellee diligently pursued the establishment of paternity and then custodyupon separating from appellant and the child.