OPINION
{¶ 1} Appellant, Amy Ready ("Ready"), appeals the judgment of the Lake County Court of Common Pleas, Juvenile Division, granting custody of her son, Sebastian Fair, to his father, appellee, Bruce Fair. For the following reasons, we affirm the judgment of the court below. *Page 2 
 {¶ 2} Ready is the mother of three children: Brittany Mudrick, Katalina Mudrick, and Sebastian Fair. Sebastian, the subject of the present appeal, was born April 30, 2005.
 {¶ 3} On July 5, 2006, the Lake County Department of Job and Family Services filed a Complaint, alleging Sebastian to be dependent as defined in R.C. 2151.04(C) (the child's "condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship"). The Complaint was based on allegations by Brittany that Ready uses drugs in the home, Ready leaves Sebastian in Brittany's care for extended periods of time, and there have been physical altercations between Brittany and Ready. The Complaint contains observations reported by Bruce, at that time the putative father, that Sebastian "has gone days without being bathed" and "is often wearing a dirty diaper." The Complaint noted that, in December 2005, Ready was arrested for a shoplifting incident at which Sebastian was present. It was reported that Sebastian's baby blanket and diaper bag were used to conceal the items Ready attempted to steal. Finally, the Complaint noted that Ready has refused all contact with the Department of Job and Family Services.
 {¶ 4} On August 4, 2006, Attorney Brett Plassard was appointed Sebastian's guardian ad litem.
 {¶ 5} On September 27, 2006, the juvenile court determined Sebastian to be a dependent child.
 {¶ 6} On September 29, 2006, the juvenile court granted the Department of Job and Family Services protective supervision of Sebastian.
 {¶ 7} On October 19, 2006, Bruce filed a Motion to be Designated as Residential Parent and Legal Custodian of Minor Child, Sebastian Fair. *Page 3 
 {¶ 8} On November 8, 2006, Ready filed a Mother's Motion to Establish Parental Rights and Responsibilities.
 {¶ 9} On January 11, 2007, the juvenile court entered a Judgment Entry establishing Bruce as Sebastian's father, based on the results of genetic testing and the parties' testimony.
 {¶ 10} Trial was conducted on the parties' motions on March 23, May 17, July 19, July 23, and July 30, 2007. The following facts were testified to at trial:
 {¶ 11} Ready is the mother of Brittany and Katalina by Michael Mudrick, to whom she was married from 1991 to 1993. Michael Mudrick is not involved with his daughters and provides no support.
 {¶ 12} In 1994, Ready married John Ready, to whom she is still married. In 2001, John Ready was incarcerated for various theft-related charges. Ready testified that she intends to divorce John Ready upon his release from prison.
 {¶ 13} In 1999, Ready was charged with child endangering, possession of marijuana, and possession of cocaine. At some point during these criminal prosecutions, Ready fled with John and her two daughters to Florida and/or Indiana. Ready was eventually placed on probation for a period of three years. In 2001, Ready violated her probation by testing positive for marijuana use and underwent six months of rehabilitation in a locked treatment facility.
 {¶ 14} In 2003, Ready was living with her mother-in-law, Sharon Ready, and her two daughters on Stevens Boulevard in Eastlake, Ohio. Sharon testified that Ready was an uninvolved mother, who spent most of her time in her bedroom while others cared for her children. *Page 4 
 {¶ 15} In January 2003, the Eastlake Police were summoned to Longfellow Elementary School, which Brittany was then attending. Based on information learned from the school, Detective Frank Bergant searched Ready's residence with her consent. Ready produced a shoe box containing a smoke pipe, marijuana seeds, a mirror, razor blades, and a safety pin and was cited for possession of marijuana, a minor misdemeanor. Ready testified the pipe belonged to a former boyfriend.
 {¶ 16} By the end of 2003, Ready and Bruce were dating. In 2004, Ready and Bruce were living together, with Ready's daughters and mother, Kathy Guess, in a residence on Mentor Avenue in Mentor, Ohio. Ready testified that when Bruce learned she was pregnant, he denied being the father. According to Ready, Bruce claimed it was impossible for him to father a child because he was undergoing radiation and chemotherapy for cancer.
 {¶ 17} In February 2005, Ready and Bruce separated. Until about February 2006, Ready lived on Johnnycake Ridge Road in Concord, Ohio.
 {¶ 18} Sebastian was born on April 30, 2005. Bruce testified that he visited Amy and Sebastian often in the first months after his birth. Bruce testified that his visitation gradually increased to include overnight visits. Ready testified, to the contrary, that Bruce visited with Sebastian very little after his birth and only began to take an active part in Sebastian's life when she began seeing another man. Between July and December 2006, Ready did not allow Bruce to see Sebastian. Ready testified that she denied Bruce visitation during these months because he was lying to Job and Family Services about her. In December 2006, the juvenile court ordered Ready to allow visitation which has continued since that time according to court order. *Page 5 
 {¶ 19} On December 2, 2005, Ready was arrested for shop-lifting from a Super K-Mart in Mentor, Ohio. Ready was at the store with Sebastian, one of her daughters, and Guess. Ready had taken between twenty-eight and thirty items worth $279.14. Ready testified the items were Christmas presents for her daughters. Tracy Borelle, a Loss Prevention Manager for K-Mart, testified that a couple of the items were concealed in the cart where Sebastian was sitting and in his diaper bag. After being convicted of Petty Theft, Ready was placed on house-arrest for thirty days, received probation for six months, fined, and required to attend theft classes.
 {¶ 20} Also about this time, Ready was arrested for shop-lifting from a Wal-Mart in Brooklyn, Ohio, and convicted of a misdemeanor theft offense. Again, Sebastian and Guess were with Ready at the time of the offense.
 {¶ 21} From February 2006 until June 2006, Ready lived with Sebastian, her daughters, and Guess on East Walnut Street in Painesville, Ohio.
 {¶ 22} From June 2006 until March 2007, Ready lived with Sebastian and her daughters on North County Line Road in Geneva, Ohio. During this time, the Ashtabula County Sheriff's Department was summoned to Ready's residence because of a disturbance in which Brittany's boyfriend was wielding a knife. Ready testified that the boyfriend had slept over at the house a couple of nights.
 {¶ 23} From March 2007 until the time of the hearings, Ready lived on Main Street in Perry, Ohio. During this time, police were summoned to Ready's residence because of an incident between Katalina and her boyfriend.
 {¶ 24} At the time of the hearings, Brittany was sixteen and Katalina was fourteen years old. Ready attempted to home-school Brittany during the ninth grade but was unable to do so because of computer problems, with the result that Britanny must *Page 6 
repeat the ninth grade. Katalina had attended four different schools in the year prior to the hearings. Neither Ready nor Katalina were certain if Katalina had successfully completed the eighth grade.
 {¶ 25} Bruce testified generally to Ready's poor parenting skills, alleging that she smoked marijuana, snorted pain relievers, left the children to be cared for by others, kept a slovenly home, did not bathe or change Sebastian's diaper regularly, fed Sebastian junk food, and kept Sebastian in a swing for extended periods of time. Bruce testified that Sebastian has breathing problems and was diagnosed with bronchitis. Despite these criticisms, Bruce admitted that Sebastian demonstrates good health and normal development.
 {¶ 26} Bruce demonstrated that he had completed parenting classes at Lake West Hospital prior to Sebastian's birth. Bruce is currently employed at RT and T Machining. Bruce testified that there is a daycare near his employment and that his mother and brother are available to watch Sebastian.
 {¶ 27} Several witnesses testified favorably regarding Ready's parenting skills, including her mother, her father and his fiancée. They testified that she fed and cared for Sebastian appropriately, maintained a clean home, and had a loving relationship with Sebastian. Ready testified that she had quit smoking marijuana five years earlier and denied snorting pain medication. Ready testified that she currently takes Morphine Sulfate and Endocet for endometriosis as prescribed by a doctor. Ready demonstrated several favorable drug screens conducted as part of the Code-a-Phone program at the recommendation of Job and Family Services. Ready testified that Sebastian's pediatrician has never diagnosed him with a breathing condition. Ready admitted that she smokes, but not around Sebastian. *Page 7 
 {¶ 28} Ready has worked for five years at Endura Plastics and has a second, part-time job at a gas station. Because she works two jobs, Sebastian will sometimes be at daycare from seven in the morning until eleven in the evening. In addition to daycare, Brittany and Guess help take care of Sebastian.
 {¶ 29} Ready, her father, and his fiancée testified that Bruce has made dubious claims about himself, such as that he was on probation for a murder conviction, had worked for the Hell's Angels, and served with the United States military in Somalia.
 {¶ 30} At the close of the hearings, the guardian ad litem recommended that it was in Sebastian's best interests that Bruce be awarded custody.
 {¶ 31} On September 26, 2007, the juvenile court issued a Judgment Entry ordering that Bruce be granted custody of Sebastian and designated the residential parent. The court noted that Ready has struggled with substance abuse issues and has twice been convicted of shoplifting. The court expressed its concern about Bruce's "unfettered tendency to either lie or greatly exaggerate his past exploits, good or bad, as well as his current physical condition." The court acknowledged that Ready "very much loves her son and that he loves and depends on her," but, "unfortunately, [Ready] is unable, at this time, to provide appropriately for him."
 {¶ 32} Ready timely appeals and raises the following assignments of error.
 {¶ 33} "[1.] The trial court erred to the prejudice of Appellant in failing to consider the factors set forth in R.C. 3109.04(B) and (F) when it ordered a change in custody from Appellant to Appellee."
 {¶ 34} "[2.] A trial court which changes R.C. 3109.042 custody from mother to father without considering and applying the factors of R.C. 3109.04(F) has abused its discretion." *Page 8 
 {¶ 35} "[3.] The trial court's order for change of custody was against the manifest weight of the evidence."
 {¶ 36} "[4.] The trial court erred when it permitted the Appellee, in the absence of expert testimony or the introduction of medical records to present evidence concerning his son's medical condition."
 {¶ 37} "[5.] The trial court erred to Appellant's prejudice by the continued introduction of irrelevant and opinion testimony."
 {¶ 38} "An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian. A court designating the residential parent and legal custodian of a child described in this section shall treat the mother and father as standing upon an equality when making the designation." R.C. 3109.042.
 {¶ 39} In custody disputes between unmarried parents, "the court must determine custody based on the best interests of the child pursuant to R.C. 3109.04(B)(1)." In re Knight, 11th Dist. No. 2002-T-0158,2003-Ohio-7222, at ¶ 16 (citations omitted); In re Colvin, 5th Dist. No. 08-CA-000005, 2008-Ohio-3927, at ¶ 18 (citations omitted); In reByrd (1981), 66 Ohio St.2d 334, at paragraph two of the syllabus (in cases involving illegitimate children, "the court shall determine which parent shall have the legal custody of the child, taking into account what would be in the best interests of the child").
 {¶ 40} "When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding * * *, the court shall take into account that which would be in the best interest of the children." R.C. 3109.04(B)(1). *Page 9 
 {¶ 41} "In determining the best interest of a child pursuant to this section * * *, the court shall consider all relevant factors, including, but not limited to: (a) The wishes of the child's parents regarding the child's care; * * *; (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) The child's adjustment to the child's home, school, and community; (e) The mental and physical health of all persons involved in the situation; (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights; * * *; (h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *." R.C. 3109.04(F)(1).
 {¶ 42} An initial custody determination, i.e. when there has been no prior order designating a residential parent and legal custodian, is reviewed under the abuse of discretion standard generally applicable to custody determinations. In re Stose, 5th Dist. No. 2008CA00049,2008-Ohio-5457, at ¶ 9, citing Davis v. Flickinger, 77 Ohio St.3d 415,416-417, 1997-Ohio-260; Flax v. Wise, 12th Dist. No. CA2007-05-017,2008-Ohio-3076, at ¶ 10 (citation omitted). "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned."Miller v. Miller (1988), 37 Ohio St.3d 71, 74 (citation omitted). To merit reversal, the lower court's judgment must be unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219 (citation omitted). "A reviewing court should not reverse a decision simply because it holds a *Page 10 
different opinion concerning the credibility of the witnesses and evidence submitted before the trial court." Davis, 77 Ohio St.3d at 419
(citation omitted).
 {¶ 43} In her first assignment of error, Ready maintains the juvenile court did not properly consider the R.C. 3109.04(F) factors. Ready is essentially claiming the court abused its discretion by awarding custody of Sebastian to Bruce. Ready cites to the testimony demonstrating that Sebastian is loved and properly cared for in her home. She argues that her drug screens only tested positive for opiates for which she has valid prescriptions and that there was no evidence demonstrating that her legal problems had had an adverse affect on Sebastian's welfare. Ready describes Bruce as a "pathological liar" who has spent little time with Sebastian and done little to materially support him.
 {¶ 44} The arguments made by Ready fail to demonstrate that the juvenile court abused its discretion by awarding custody to Bruce. The record before us presents the not unusual situation where neither parent is wholly unsuitable to have custody of the child. The determinative question, however, does not focus on parental suitability but rather Sebastian's best interests. E.g. Siefker v. Siefker, 3rd Dist. No. 12-06-04, 2006-Ohio-5154, at ¶¶ 7-8 ("the testimony is not so one-sided to demonstrate that either party is a `bad' parent," nevertheless "[t]he trial court had to make a determination as to the children's best interests").
 {¶ 45} Although there is evidence in the record that would support an award of custody to Ready, there is also abundant evidence to support the juvenile court's conclusion that it is in Sebastian's best interests to be placed with Bruce. There is evidence that Bruce loves and cares for Sebastian and is able to provide for him. Bruce has demonstrated steady employment and living arrangements. Ready has changed *Page 11 
residences repeatedly and has issues with her teenage daughters which have the potential to negatively impact Sebastian's welfare. The court was concerned with Bruce's tendency to lie, but there was also evidence of Ready being less-than-truthful on several occasions.[1] Moreover, the fact that Ready has twice committed theft offenses while having Sebastian in her possession reflects poorly on her judgment. While some evidence exists that would support an award of custody to Ready, there is absolutely nothing arbitrary or unconscionable about the court's decision to award custody to Bruce.
 {¶ 46} The first assignment of error is without merit.
 {¶ 47} In her second assignment of error, Ready argues that, although the juvenile court claimed to have considered the statutory factors, "it failed to provide a factual basis sufficient to support its consideration of the statutory factors."
 {¶ 48} Consideration of Ready's argument is compromised by the fact that she failed to request the juvenile court to make separate findings of fact. "When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise * * *." Civ. R. 52(A). The Ohio Supreme Court has noted that "Civ. R. 52, requiring separate findings of fact and conclusions of law upon timely request, applies to change of custody proceedings which involve questions of fact tried and determined by the court without a jury." State ex rel. Papp v. James,69 Ohio St.3d 373, 377, 1994-Ohio-86, quoting Werden v. Crawford (1982),70 Ohio St.2d 122, at syllabus. *Page 12 
 {¶ 49} In the present case, the juvenile court did indicate some factual basis for its judgment, noting Ready's past problems with drugs and more recent theft convictions. Accordingly, there are no grounds for holding that the court failed to properly consider the R.C. 3109.04(F) factors. Derrit v. Derrit, 163 Ohio App.3d 52, 2005-Ohio-4777, at ¶ 74, quoting Pickett v. Pickett, 11th Dist. No. 2001-L-136, 2002-Ohio-3128, at ¶ 33 ("`in the absence of any indication to the contrary, [this court] will assume that the trial court considered all the relevant factors' that must be reviewed in determining the best interest of the child") (citation omitted); Dadosky v. Dadosky, 4th Dist. No. 02CA706,2003-Ohio-7282, at ¶ 9; Scarbrough v. Nutt, 9th Dist. No. 00CA007743, 2001 Ohio App. LEXIS 3195, at *21-*22.
 {¶ 50} The second assignment of error is without merit.
 {¶ 51} In the third assignment of error, Ready argues the trial court's judgment is against the weight of the evidence.
 {¶ 52} In the context of a custody determination, the Ohio Supreme Court has held that "[w]here an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, at syllabus. "The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." Davis, 77 Ohio St.3d at 418.
 {¶ 53} In particular, Ready objects to the juvenile court's comment that, "although [Ready] claims that she is addressing these [drug and alcohol] issues, there has been no direct evidence presented in support of that claim." Ready counters that she *Page 13 
submitted the results of six drug screens detecting no presence of THC (marijuana) or alcohol and that she has completed the drug and alcohol assessment required as part of her case plan. The only evidence of continued marijuana use was the testimony of Bruce, whom the court acknowledged to be a liar.
 {¶ 54} While the drug screens constitute some direct evidence that Ready is not using marijuana or alcohol, they do not invalidate the juvenile court's concerns about her substance abuse. Ready's history of involvement with drugs goes back to 1999. Bruce, whose credibility this court must refrain from weighing, testified that Ready smoked marijuana while they were living together from 2004 to 2005 and that he continued to smell marijuana at her residences after they separated. Ready's position is also undermined by the fact that she only submitted to the substance abuse assessment and drug screens beginning in April 2007, after trial had begun on the issue of custody.
 {¶ 55} For these reasons and the reasons stated under the first assignment of error, there is a substantial amount of credible and competent evidence to support the juvenile court's judgment.
 {¶ 56} The third assignment of error is without merit.
 {¶ 57} In the fourth and fifth assignments of error, Ready claims the trial court erred by allowing certain impermissible testimony into evidence.
 {¶ 58} "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271. Likewise, "[t]he admission of relevant evidence pursuant to Evid. R. 401 rests within the sound discretion of the trial court." Id. *Page 14 
 {¶ 59} In the fourth assignment of error, Ready contends the juvenile court erred by allowing, over counsel's objection, Bruce to testify that Sebastian had a "breathing problem" and was diagnosed with bronchitis. Ready maintains such evidence constitutes hearsay under Evid. R. 802 and/or scientific knowledge under Evid. R. 702.
 {¶ 60} The admission of Bruce's testimony regarding Sebastian's breathing does not constitute an abuse of discretion within the context of a juvenile proceeding. This court has on numerous occasions "held that the applicability of the rules of evidence is limited in a dispositional hearing before a juvenile court." In re Fox, 11th Dist. No. 2000-P-0008, 2001 Ohio App. LEXIS 2584, at *10 (citation omitted);Chatfield v. Chatfield, 2nd Dist. No. CA 1636, 1982 Ohio App. LEXIS 12217, at *2 (citation omitted); Schory v. Schory, 11th Dist. No. 2949, 1981 Ohio App. LEXIS 14647, at *3 ("the court has very wide discretion in determining what is best for the child, and is not bound by strict legal rules of evidence") (citation omitted).
 {¶ 61} The Rules of Juvenile Procedure provide that, at dispositional hearings, "the court may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence." Juv. R. 34(B)(2); cf. In re Baxter (1985), 17 Ohio St.3d 229,233 ("The issue at the dispositional stage involves a determination of what is in the child's best interests. There must be strict adherence to the Rules of Evidence at the adjudicatory stage. Yet, `any evidence that is material and relevant, including hearsay, opinion and documentary evidence,' is admissible at the dispositional stage.") (citation omitted).
 {¶ 62} In the present case, moreover, the juvenile court made the following factual finding in its September 27, 2006 adjudicatory order that Sebastian is a dependent child: "Sebastian * * * has breathing problems for which an inhaler is used." *Page 15 
 {¶ 63} Accordingly, there was no error in the admission of Bruce's testimony. Ward v. Ward, 11th Dist. No. 97-L-165, 1998 Ohio App. LEXIS 2934, at *12 ("we discern no error in the trial court's admission of the lay testimony concerning the parties' observations of Benjamin's symptoms, and their recitation of the medical opinions that had been obtained").
 {¶ 64} The fourth assignment of error is without merit.
 {¶ 65} In the fifth and final assignment of error, Ready claims the court erred by the repeated admission of irrelevant testimony. Specifically, Ready objects to the testimony regarding her husband, John Ready's, convictions and incarceration; testimony that John Ready's name appeared on Sebastian's birth certificate; testimony regarding other people who have lived or stayed in Ready's household; testimony about Bruce's mother and the possibility of her watching Sebastian; testimony that Bruce was terminated from a job for calling Sebastian's day care; testimony regarding Britanny's complaints to Job and Family Services; and cumulative testimony regarding Ready's theft offenses.
 {¶ 66} Initially, we note that "[w]hen a matter is tried before the court in a bench trial, there is a presumption that the trial judge `considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" Jackson v. Herron, 11th Dist. No. 2003-L-145,2005-Ohio-4046, at ¶ 28, citing State v. White (1968),15 Ohio St.2d 146, 151, and Columbus v. Guthmann (1963), 175 Ohio St. 282, at paragraph three of the syllabus; In re J.P., 8th Dist. No. 81486, 2003-Ohio-3522, at ¶ 29 (citations omitted).
 {¶ 67} Next, we find that much of the objectionable evidence is relevant to Sebastian's best interests. John Ready is currently Ready's husband. Although *Page 16 
incarcerated at the time of trial, the conditions of his incarceration and Ready's intentions regarding her relationship with John are significant inasmuch as that relationship may resume upon his release. The crimes underlying John's convictions are relevant inasmuch as Ready testified they led to her conviction for child endangering. Obviously, a conviction for child endangering is relevant in the consideration of a child's best interests. Sebastian was not yet born at the time of these events, but Ready had custody of Brittany and Katalina at that time. Ready's relationship with her daughters is relevant for two reasons. First, these relationships reflect her abilities as a parent and, second, Brittany and Katalina would be part of the household shared by Sebastian. Accordingly, it was proper for the court to consider the physical confrontations involving the daughters' boyfriends which occurred at Ready's residence.
 {¶ 68} Ready argues the purportedly irrelevant evidence of her past drug use prejudicially influenced the juvenile court's judgment, since the court specifically referred to her history of drug use. We disagree. The few comments made by the juvenile court judge in his written Judgment Entry do not constitute the sole basis for awarding custody of Sebastian to Bruce. At noted above, the court was not requested to issue separate findings of fact. The court rendered its judgment "upon consideration of the Motions, the Memoranda, the testimony, the evidence, the arguments of Counsel, the recommendation of the Guardian ad Litem and the law." When reviewing the court's judgment, we must consider all the evidence before the court, not merely what it decided to expressly mention in its judgment. As discussed in the first and third assignments of error, there was substantial competent (i.e. relevant and admissible) and credible evidence to support the award of custody to Bruce. Assuming, arguendo, *Page 17 
there was some irrelevant evidence before the court, it does not render its judgment an abuse of discretion.
 {¶ 69} The fifth assignment of error is without merit.
 {¶ 70} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Juvenile Division, granting custody of Sebastian to Bruce is affirmed. Costs to be taxed against appellant.
CYNTHIA WESTCOTT RICE, J., concurs,
COLLEEN MARY O'TOOLE, J., dissents.
[1] We note in particular: in 2002, Ready gave false information to an Eastlake Police Officer after running a red light; Ready told the electric company that Sebastian needed a breathing machine despite her in-court testimony that he does not; Ready denied leaving Bruce an obscene message prior to an audiotape of such a message being played at trial, which she then acknowledged leaving. *Page 1